[Civ. No. 11454. First Dist., Div. Two. Sept. 3, 1941.]

ALBERT YOUTZ, Appellant, v. THOMPSON TIRE CO. (a Corporation) et al., Respondents.

Elmer P. Delany for Appellant.

Hadsell, Sweet, Ingalls & Lamb and Hadsell, Sweet, Ingalls & Carroll for Respondents.

NOURSE, P. J.—This is an appeal from an order granting defendants' motion for nonsuit in a personal injury action.

The evidence showed that in January, 1937, the Cleveland Wrecking Company made arrangements with defendant company whereby the latter would repair its truck tires and rims and would replace defective parts with new ones; subsequently all flat or damaged tires or rims were sent to defendant for repairs. Plaintiff was employed by the wrecking company as a timekeeper and toolman with headquarters in a small shack on what was known as "Terminal Site." On July 26, 1937, Walker, the maintenance man for the wrecking company, sent a flat tire to defendant company; the tire was one for an International Truck, nine by twenty-five in size and carrying 90 to 110 pounds of air per cubic inch. The rims on which such tires were mounted were constructed so that they collapsed into a smaller circumference to facilitate removal and replacement of the tires; the tire could be placed on the collapsed rim which was then forced back into a perfect circle by a spreading machine and locked into position by a small lock consisting of a steel bar which kept the rim from collapsing; there was also a solid metal hoop lying between the cut rim and the tire forming an edge to keep the tire in the inner main rim. The flat tire mentioned above was repaired by defendant Smith, an employee of the tire company, and sent back to the wrecking company at 2:30 p. m. on July 27, 1937. Mr. Walker saw defendants' employee roll the tire up to the door of one of the wrecking company's tool rooms located at 260 Spear Street. That afternoon Robl, a truck driver for the wrecking company, had a flat tire on his dump truck at about 5:15 p. m.; he went to the Spear Street tool

room and placed a tire which he found there on the fender of his truck. Robl then proceeded over to plaintiff's tool house to procure some wrenches; he removed the flat tire from his truck but found that the spare would not go on; he noticed that the rim lock was not properly locked and that the two ends of the collapsible rim were not flush at the point of meeting. Plaintiff, who was standing nearby, stated that Robl would need a couple of hammers, and the two men walked into the tool house and each procured a hammer. Robl placed the tire and rim flat on the ground and plaintiff extended his arms over and across the tire placing his hammer on the ends of the rim which were not flush. Robl struck plaintiff's hammer with his larger one, and on the second or third blow the inner rim of the wheel collapsed suddenly causing the pressure from the inflated tire to violently throw out the freed steel hoop which struck both men. Plaintiff suffered compound comminuted fractures of both arms necessitating several operations. The result is a permanent limitation of motion in his arms. The court granted defendants' motion for nonsuit on the ground that Robl's action in hammering on the tire and in asking plaintiff's assistance was the proximate cause; plaintiff appeals from the judgment of nonsuit.

Preliminarily the respondents urge in support of the judgment that there was no evidence that a contract for the repair of tires existed between the tire company and the wrecking company; no evidence that the tire repaired by Smith and delivered to the wrecking company was the one that caused the accident; no evidence that the tire repaired by Smith was negligently assembled, that the rim was defective or negligently attached; and no evidence that Smith or the respondent company had any knowledge of the alleged defect. For the purposes of this appeal we may assume that all these matters (except that relating to the respondents' knowledge of the defective condition of the tire) were proved, or that the jury might have drawn inferences favorable to the appellant.

■ The appeal rests upon the single question of proximate cause, and we will confine the discussion to that issue with the observation that, though appellant contends that respondents had knowledge of the defective condition of the tire, he does not direct our attention to any portion of the record which tends to prove that fact. We know of no presumption that the respondents should be deemed to have wilfully and knowingly delivered a defective tire, which they must also have

known was not usable. It is more reasonable to infer that the defect arose from the careless and negligent manner of assembling it; but with no facts of any kind tending to prove respondents' knowledge, there is no room for an inference that such knowledge was had.

The controlling factor is therefore the extent of liability of a manufacturer or repairman for defects in workmanship when the defect is known to the purchaser or third person and not known to the manufacturer. Assuming, therefore, that the same rule of liability applies to a repairman as applies to a manufacturer, it is appropriate at this time to state that rule, which is given with its exceptions and limitations in 45 Corpus Juris, p. 892, as follows: "A manufacturer or seller of an article which is not inherently dangerous, but which is rendered dangerous by a defect therein, is liable for an injury to a third person arising from the defect, where he had knowledge of the defect and of the danger, and failed to give notice or warning thereof to the purchaser, or concealed the defect, or represented the article to be safe and sound, or, in other words, was guilty of fraud or deceit. Conversely, the manufacturer or seller is not liable where he had no knowledge of the defect or danger, and made no false representations, or where he gave notice of the defect to the purchaser, or the purchaser had knowledge thereof before the injury. . . . "

The authors of Ruling Case Law treat the question under the subject of "Sales" and state the principle as follows: (24 Ruling Case Law, p. 510) "The ground of liability is the seller's superior knowledge of the dangerous characteristics of the article sold; and where it appears that the person injured was as fully cognizant of the peril as was the defendant seller or manufacturer there can be no recovery." California Jurisprudence treats it under the head of "Negligence." Thus we find the same principle of legal liability stated: (19 Cal. Jur., pp. 612, 613) "But liability attaches where one delivers an article, which he knows to be dangerous, to another person, who has no notice of its nature and qualities, and injury results to such other person through no negligence of his own. . . . Likewise, if one who buys from a tradesman knows the dangerous character of the substance purchased, he alone is liable to third persons for injuries subsequently incurred." In Restatement of the Law of Torts, Vol. II, p.

1047, treating specially the subject of chattels known to be dangerous for intended use, the following statement appears: "One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved therein. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made." The qualification of the general rule of liability found in the passage quoted from Corpus Juris is well stated in *Gutelius* v. *General Electric Co.*, 37 Cal. App. (2d) 455, 458 [99 Pac. (2d) 682], from which we quote: "But the rule holding the manufacturer liable for negligence in construction is subject to the qualification that the user of the manufactured article must be without knowledge of its defective condition. In Bohlen's Studies in the Law of Torts at page 116, the author says: 'It seems quite clearly established that where the purchaser, actually knowing the defective nature of the article, puts it to a use for which it is unfit and unsafe, any injury received therefrom is due to his misuse and not to the act of him who created the defect.' The qualification of the general rule was recognized in *Stultz* v. *Benson Lumber Co.*, 6 Cal. (2d) 688, 689, 694 [59 Pac. (2d) 100], where Mr. Justice Shenk, speaking for the court, said: 'Furthermore the pertinent principles hereinbefore referred to are predicated on the knowledge or duty of awareness of the defect on the part of the manufacturer or seller and his failure to warn the purchaser of such defect, and the absence of similar knowledge or duty on the part of the purchaser. (45 Cor. Jur., p. 892, sec. 331, and cases cited.)' " The authority most frequently cited to the point, because the opinion covers the rule in its various phases, is *Olds Motor Works* v. *Shaffer*, 145 Ky. 616 [140 S. W. 1047, Ann. Cas. 1913B, 689, 37 L. R. A. (N. S.) 560], where the court at pages 1049–1052 said: "But in the other class of cases, where the article itself is not inherently or intrinsically dangerous to health or life, a third party, seeking to hold the maker liable for injuries suffered by him in the use of the article, must show that the

maker knew it was unsafe and dangerous, and either concealed the defects, or represented that it was sound and safe. But even when this is shown, the maker will not be liable, if it is made to appear that the purchaser had knowledge of the defects at and before the third party was injured in using it. (Citing numerous cases.) . . . The rule seems to be that, where the purchaser of an article knows that it is unsafe or dangerous, and with knowledge of this fact invites or permits a third party to use it, and the third party is injured, he cannot maintain an action for tort against the maker. The reason for this is that the action against the maker proceeds on the theory, and is founded on the fact, that in selling the article he practiced fraud and deceit in concealing the defects that made its use unsafe and dangerous; and, of course, when it is admitted or proven that he has not practiced any concealment, and that the purchaser was well informed as to the defects, the bottom drops out of the case against the maker, and the liability is shifted to other shoulders. Another reason is that the maker's wrongful act in such a case is not the proximate cause of the injury, when it is shown that there was the intervention of a new agent, to wit, the purchaser, who, with knowledge of the danger, used and permitted others to use the article.''

Appellant's knowledge of the defective condition of the tire comes from his own testimony. After observing Robl remove the flat tire from his truck and endeavor unsuccessfully to mount the repaired tire he saw Robl looking at the inside of the repaired tire where the rim was unlocked. He then stated to Robl that he "guessed he would have to have a couple of hammers, so we walked into the tool shop and I gave him one and took one myself." Appellant also put in evidence the testimony of Robl which disclosed in detail his full knowledge of the defective and dangerous condition of the tire as the agent or employee of the one to whom the chattel was supplied. This evidence brings the case squarely within the rule above noted, and the order granting the nonsuit was proper.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied October 3, 1941, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1941. Carter, J., voted for a hearing.