[Civ. No. 9356. Third Dist. Sept. 10, 1958.]

GLADYS MARIE BROOKS, Appellant, v. ALLIS-CHAL-MERS MANUFACTURING COMPANY et al., Defendants; INSLEY MANUFACTURING CORPORATION, Respondent.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellant.

Hadsell, Murman & Bishop for Respondent.

PEEK, Acting P. J.—This is an appeal by plaintiff from a judgment of nonsuit in an action by her against Insley Manufacturing Corporation for negligent design and manufacture of a crane involved in the death of her husband, Cecil O. Brooks. Plaintiff also appeals from an order granting judgment on the pleadings in favor of Insley relating to a cause of action alleging breach of warranty of fitness of the crane. All of the original defendants have been dismissed except the Insley Manufacturing Corporation.

The appeal from the order granting judgment on the pleadings on the breach of warranty cause of action does not appear to be supported by existing law, which appellant concedes; hence the judgment as to that cause must be affirmed, and we limit this opinion solely to the question of the propriety of the nonsuit.

Thus the only question presented is if by disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence, can it be said that there was no substantial evidence to support a verdict in favor of plaintiff? (*Leonard* v. *Watsonville Community Hospital*, 47 Cal.2d 509, 514-515 [305 P.2d 36].)

The evidence, when viewed in light of the stated rule, shows that Brooks was employed as an iron worker by the Anson-Smith Company which was engaged in building a fish hatchery for the state. On the morning of December 10, 1952 (the first day of his employment), at about 10 a. m., Brooks was "tending the load" of an Insley crane. In this his duty was to keep the load, which was suspended from a cable and held in a sling about two to four feet off the ground, from spinning or swinging. He followed customary procedure by holding on to the load with his hands as he walked along with the moving crane. In fact his foreman testified that had he not held on to the load, he would have been fired. The crane was engaged in moving a 1,500 to 2,000-pound load of steel a distance of 100 to 150 feet. The day was rainy and the ground was soft and depressed in spots. Apparently because of its construction, the crane when in motion would move from side to side; that is, it zig-zagged back and forth rather than proceeding in a straight line, which motion caused the load to swing back and forth. There also was testimony that the uneven ground caused the boom to sway up and down, allowing slack in the cable and thereby causing it to whip-lash on the drum and to vary the tension on the spring which held the safety device. The boom of the crane was at about a 45-degree angle from the cab of the crane. Without warning the boom fell, fatally injuring Brooks.

When the crane operator saw the boom start to fall he jumped on the boom brake in an effort to stop it, but the brake failed. There was evidence that the boom on this crane had fallen on two prior occasions but that it had not been inspected at those times to determine if there had been a mechanical defect. Immediately following the accident here in question the boom was raised and it was discovered that the brake could not hold the weight of the boom even without the load.

Plaintiff's contentions are directed at the design and construction of the crane in two particulars—first, the brake handle and drum; and second, a safety device called a "boom dog."

In support of her first contention it is argued that the evidence showed the brake was so negligently designed that it was not adequately protected from the elements in that rain could get on the brake and drum, allowing it to slip; that on the morning of the accident the operator endeavored to protect it by covering it with some pieces of tin, but it still got wet so

that when the boom started to fall and he jumped on the brake, it did not hold. Additionally it is argued that the evidence further shows that the brake handle and its mechanism was so negligently constructed that although designed to be normally "on" when in a down position, the handle showed marks indicating that it would become stuck, and that when in such position the brake handle could not be depressed to increase the brake pressure.

Plaintiff's argument concerning her second contention relates to the construction of the boom dog, a device designed to secure the boom against movement. It consisted of a piece of metal hung vertically over ratchet gears attached to the driveshaft of the boom drum. When it was desired to raise the boom, the operator would disengage the dog by a lever allowing the drum to run free. When it was the desire to lock the boom at the point to which it had been raised, the operator would move the lever to the "in" position, thereby engaging the dog in the teeth of the ratchet and hence preventing movement of the drum. When moving a load, as was being done in this case, it was the practice to engage the dog to prevent the drum from moving and allowing the boom to fall. This is of importance in regard to this particular crane since it had a "dead boom"; that is, there was but one source of power. The crane could either raise or lower the boom, or travel by means of caterpillar treads, or swing the boom horizontally, but it could perform only one of these operations under power at any one time. The dog itself couldn't be seen by the operator by reason of its location behind a metal plate guarding the boom line drum. Hence the operator could not visually determine whether or not the dog was engaged.

Immediately following the accident a state inspector for the Division of Architecture, who was an eyewitness to the accident, examined the crane and at the trial testified that with the lever in the engaged position, he was able to move the dog in and out; that by reason of being vertically suspended it could, in effect, "pop out" while the crane was being operated. There was further testimony that although the operator turned the lever for controlling the dog to the engaged position, the dog could have stopped on the point of a ratchet tooth; that if it stopped at that point, as a safety engineer for the Industrial Accident Commission testified, "You could expect trouble." There was further evidence of gouging on the teeth of the ratchet points and that the nature of the gouging was

such that it could only have occurred while the boom was coming down. Thus there was evidence that if the brake was not working properly, and the dog was on the point of the tooth, the boom could come down by jarring or by the combination of depressions in the ground over which it was traveling. It was further shown that the zig-zagging movement of the crane could also have so released the pressure on the boom dog as to have allowed the boom to fall. There was additional testimony by the safety engineer that when he examined the set screw which was used to prevent the dog from rotating, he found that the set screw was not keyed into the shaft; and that the spring which held the dog against the ratchet was inadequate in that it did not have sufficient tension. The operator of the crane testified that the last time he had raised or lowered the boom he had put the dog in the ''in'' position. This was corroborated by the inspector who, immediately after the accident, examined the crane and found the dog to be in the ''in'' position, as did the foreman who also checked the crane shortly after the accident.

Since ''. . . it is only when reasonable minds cannot differ with respect to whether proved facts and reasonable inferences therefrom make out negligence or nonnegligence, that such issues may properly be taken from the jury'' (*Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 766 [185 P.2d 94]), then it would seem to follow from the evidence so summarized that reasonable minds could well differ in light of all of the circumstances of this case, and that therefore the question of defendant's alleged negligence should have been submitted to the jury.

Defendant's primary contention, which appears to have been the basis of the trial court's order, was that proximate causation is lacking, in that the accident was the proximate result of the negligence of the crane operator. However, if it may be said that the jury could reasonably have found negligence in the design of the crane, and we conclude that it could, then defendant's liability could not be cut off by reason of the intervening negligence of the operator, if such negligence can be said to have been foreseeable, and whether or not such intervening negligence was foreseeable was a question for the jury. (*DeMirjian* v. *Ideal Heating Corp.*, 129 Cal. App.2d 758 [278 P.2d 114].)

Defendant further argues in support of the judgment that it is not liable by reason of the contributory negligence of Brooks. In this regard reliance is placed upon testi-

mony that Brooks had been repeatedly warned to stay out from under the boom, and that he had not heeded such warning. However, there is a statutory presumption that he used due care. (Code Civ. Proc., § 1963, subd. 4.) This presumption, coupled with the testimony that the crane was moving in a zig-zagging manner, thereby causing the boom to swing as the crane changed direction, was evidence from which the jury could infer that at the time of the accident the boom had swung over Brooks, rather than that Brooks had stepped under the boom. Since plaintiff's evidence is reconcilable with the presumption, the question of contributory negligence was one for the jury. (*Johnson* v. *Nicholson,* 159 Cal.App.2d 395, 409 [324 P.2d 307].)

It is finally argued by defendant that the accident was due to an obvious danger. It is not clear from its brief whether obvious danger is urged as indicating contributory negligence or assumption of risk. If the theory is contributory negligence, the rule is that Brooks must have appreciated the degree of danger involved as well as the danger itself. (*Johnson* v. *Nicholson, supra,* p. 410.) Here it is to be noted that this was the first day that Brooks had worked with this crane, and he had not seen it fall on two prior occasions. Also, as previously noted, the jury could have found that on this particular occasion the boom had swung over him. And also as noted, whether he had appreciated the amount of danger involved was a jury question. Again, if defendant's theory is that Brooks assumed the risk, then it is the rule that there must be voluntary exposure to danger and actual, not constructive, knowledge of the risk involved. (*Johnson* v. *Nicholson, supra,* p. 411.) Furthermore, there was the testimony of the foreman that Brooks was under orders to tend the load, and that if he had not done so he would have been fired; hence there would be the further question as to Brooks' actual knowledge of the risk involved.

The judgment on the pleadings as regards the warranty cause of action is affirmed. The judgment of nonsuit as to the negligence cause of action is reversed.

Schottky, J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied October 3, 1958, and respondent's petition for a hearing by the Supreme Court was denied November 5, 1958.

*Assigned by Chairman of Judicial Council.