[Civ. No. 19057. First Dist., Div. Two. Dec. 12, 1960.]

HELENE SCHUMANN, Appellant, v. C. R. REICHEL ENGINEERING COMPANY, INC. (a Corporation) et al., Respondents.

Frederick D. Smith and McMurray, Walker & Tepper for Appellant.

Boyd, Taylor, Nave & Flagcollet for Respondent Reichel.

Pelton, Gunther, Durney & Gudmundson for Respondent Loomis.

McGOLDRICK, J. pro tem.*—This is an action by one Helene Schumann for damages allegedly suffered as the result of injuries which she sustained in a fall on premises owned, leased, operated and maintained by C. R. Reichel Engineering Company, C. R. Reichel and Madeline Loomis. Plaintiff alleged that defendants had negligently and carelessly constructed, installed, operated and maintained certain portions of said premises, and that the aforesaid injuries were the proximate result of this negligence. In the trial of the matter by jury, the court denied plaintiff's motion for directed verdict, and granted similar motions made on behalf of all defendants. From the judgment entered, the plaintiff appeals.

The evidence shows that at all times pertinent hereto, respondent, C. R. Reichel, was the owner of the premises in question, which consisted of a three-story building. Its ground floor was occupied by a commercial enterprise, and respondent Loomis was the assignee of a lease to the second and third floors. The relevant provisions of the lease from respondents, C. R. Reichel Engineering Co. and C. R. Reichel to respondent, Madeline Loomis, are as follows:

"4. The lessee shall, at their sole cost and expense, keep and maintain the said premises and appurtenances and every part thereof (excepting exterior walls and roof, which the lessor agrees to repair), including glazing, and the interior of the premises, in good and sanitary order, condition and repair. . . ."

. . . . . . . . . . .

"11. . . . Consent is hereby given to sublease and sublet rooms and apartments on the demised premises in the ordinary and usual conduct of the hotel and lodging house business to be conducted by the lessee in said premises." She operated the second and third floors as a hotel or apartment house, appellant occupying three rear second floor rooms as one of her tenants.

The back wall of the building stood flush with the rear property line. In this wall was an indentation, or lightwell, affixed to the outside of which was a series of steeply angled and vertical wooden ladders reaching from ground level to the roof, there being no access thereto from inside the building. Between these ladders were located two wooden platforms, one at the second-floor level and one at the third,

---

*Assigned by Chairman of Judicial Council.

which extended across the lightwell. Access to the lower of these from the interior of the building could be had by means of any one of three windows, although the owner testified that such would be difficult for anyone to accomplish. The central one of these windows was located at the rear end of a public hallway, and the other two opened from appellant's kitchen and bedroom respectively.

The platform itself was composed of three parallel boards, two by six, which extended across the lightwell. Across these were several two by three boards which had been affixed, on edge, and in a staggered fashion. Reichel testified that the spaces between had been left in order that light might pass into the rooms. A single-span, $32\frac{1}{2}$-inch-high railing extended along the edge of this platform. Appellant testified that she had been aware, before her accident occurred, that there was just one railing, that it was "too low," that there were open spaces in the platform flooring, and that there was a hole therein which permitted access to the ladder. It is the allegedly dangerous condition of this platform to which her complaint in the instant action was directed.

Attached to the exterior frame of appellant's kitchen window was a pulley from which a clothesline extended to another pulley affixed to a building on the outside of the cement covered back yard. Both the latter building and the yard were owned by Reichel's wife. Appellant testified that in making use of this line, she normally would reach out through said window. It is also evident from the photographs in evidence that she could get out onto the platform for this purpose by going through the kitchen window.

On the day of the accident, appellant had washed clothes and hung them on this clothesline. Later, she had been in her kitchen again, this time washing dishes. However, she could remember nothing subsequent to that event until she found herself on her knees in the yard below. The fact that she fell, and that she suffered serious and permanent bodily injury as a result thereof, is not in dispute. Although the hospital records show that she had complained of sudden "blackouts" or fainting spells which occurred prior to this time, there is no direct evidence whatsoever as to what actually occurred during this crucial interval.

■ It is an established rule that a directed verdict for defendant may be sustained on appeal only if there is no substantial evidence which, together with all legitimate inferences, tends to establish the averments of the complaint. (48 Cal.

Jur. 2d § 148, p. 186.) Appellant here contends, first of all, that respondents owed her a duty to use ordinary care to see that the rear platform outside her apartment windows was safe for her to use. ■■■ She relies upon the case of *Burks* v. *Blackman*, 52 Cal.2d 715, 718 [344 P.2d 301], wherein the Supreme Court said:

"The general rule is that a lessor is not under a duty to maintain leased premises free from defective conditions that cause injuries to his tenants; the lessee takes the premises as he finds them and must protect himself against any dangerous conditions found thereon. [Citations.]

■■■ "To this general rule there are these exceptions: "1. A lessor is liable for personal injuries to a lessee caused by defects in the premises known to the lessor and unknown to the lessee if the lessor through fraud or concealment allows the lessee to occupy the premises in ignorance of such risks. [Citations.]

■■■ "2. A lessor who leases a portion of his property and retains control of any other part which the lessee is entitled to use as appurtenant to the part leased to him is subject to liability to the lessee for bodily injury caused to the lessee by a dangerous condition on the portion of the property retained under the lessor's control, if the lessor by the exercise of reasonable care could have discovered the defective condition and could have made the property safe. [Citations.]"

The evidence indicates that although there were two exits toward the front of the building in question which were accessible from its second and third floors, one being an inside stairway and the other an outside metal fire escape, the only rear exit accessible from these floors was the system of platforms and ladders heretofore described.

Appellant also urges that respondents were required to comply with sections 16405, 16407 and 16412 of the Health and Safety Code. The sections are part of the State Housing Act and she also maintains that respondents were required to comply with section 2102 of the San Francisco Building Code, dealing with the number and accessibility of means of ingress and egress from dwellings, apartment houses and hotels. As to the applicability of the Health and Safety Code sections, *supra*, it has been held as a general rule that building code provisions are not retroactive. (*Markwalder* v. *Leonhard*, 152 Cal.App.2d 254 [313 P.2d 200].) In the case at bar, there was no evidence introduced as to when the building was constructed. However, appellant contends that the

system of platforms and ladders was reconstructed subsequent to the effective date of the act and, therefore, they apply. A review of the evidence does not support appellant in this proposition.

The owner testified, without contradiction, that the present structure was the same as the former; that no alterations were made except removing defective wood and extending the ladder to the roof of the building. This work involved reinforcing the existing structure rather than reconstructing it as argued by appellant.

In the face of this evidence, it is our view that the respondents were not required to comply with the Health and Safety Code sections, *supra*. Moreover, they were not required to comply with the San Francisco Building Code, since no section of that code was introduced into evidence. This court cannot take judicial notice of a municipal ordinance. It must be proved like any other fact. (*Markwalder* v. *Leonhard, supra*.) Appellant's contention, therefore, is without merit in this instance.

We now turn to the key question, that is, whether there is substantial evidence, together with all legitimate inferences, that the platforms and ladders were either used by or maintained for tenant use. There is no direct evidence except the photographs in the record of tenant use and the one instance where a blanket was retrieved from the back yard for one of the tenants. In addition to these, however, we have appellant's complaint about her twisted clothesline made shortly before the accident. In answer thereto, the building manager told her not to go out on the platform, but rather to wait until her husband or one of the other male tenants returned. This indicates tacit approval of tenant use. A review of the photographs introduced in evidence indicates clearly the type of construction of the platforms and ladders, each platform leading to a window where pulleys are affixed for the clothesline use. This summary of facts compels us to the decision that the jury could draw a legitimate inference that they were intended for tenant use. Moreover, an inference could also be drawn that they would provide ingress and egress at times of emergency. To say this well-constructed system of platforms and ladders was only intended for employee use to repair the roof and that no inference could be drawn to the contrary would be absurd. Since we reach this conclusion, the next question to be determined is the applicability of the safety orders of the Industrial Acci-

dent Commission, Numbers 3215, 3225, 3237, 8 California Administrative Code. These orders were offered in evidence and refused admission by the trial court. However, this court may take judicial notice of them. (Code Civ. Proc., § 1875, subd. 3.)

Section 3215 of the General Industry Safety Orders issued by the Industrial Accident Commission provides as follows: "Platform means an elevated working level for persons. Storage platforms, balconies and open-sided floors are considered platforms for the purpose of these orders."

Section 3237, subdivision (b), of the General Industry Safety Orders requires that "Platforms, runways, ramps or other working levels four (4) feet or more above the floor, ground or other working areas shall be guarded by a railing on all open sides. Standard railing shall be provided where over-head clearance permits. . . ."

Section 3225 of the General Industry Safety Orders, subdivision (a), defines standard railing as consisting of "a top rail, mid-rail, and posts having a vertical height of not less than 42 inches nor more than 45 inches from the upper surface of the top rail to the floor, platform, runway or ramp level. The top rail shall be smooth surfaced throughout the length of the railing. The mid-rail shall be approximately half-way between the top rail and the floor, platform, runway, ramp or toe board, if used. . . ."

Subsection (c) of said section requires the mid-rails to be of not less than 1-inch by 4-inch material.

The General Industry Safety Orders are primarily intended for the protection of employees. However, they have been extended to members of the public in places of employment (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854]), to students in a school (*Lehmann* v. *Los Angeles City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55]), to a business invitee (*Philips* v. *Sun-Best Fruit Distributors,* 160 Cal.App.2d 70 [324 P.2d 948]), to the son of an employee (*Tesche* v. *Best Concrete Products, Inc.,* 160 Cal.App.2d 256 [325 P.2d 150]), to a contractor's employee (*Hyde* v. *Russell & Russell, Inc.,* 176 Cal.App.2d 578 [1 Cal.Rptr. 631]).

 Here, the owner states that the system of platforms and ladders was intended for employee use. Since an inference may be drawn from the evidence that they were also intended for tenant use, it follows that under these circum-

stances, the safety rules are applicable. (*Longway* v. *McCall*, 181 Cal.App.2d 723 [5 Cal.Rptr. 818].)

Even assuming *arguendo* that said rules do not apply, we have the additional problem of whether the system of platforms and ladders was dangerous and defective for tenant use, and if by the exercise of reasonable care, the landlord could have discovered this condition and could have made the property safe (*Burks* v. *Blackman, supra*).

Whether they were dangerous or not created an issue of fact for the jury to determine considering all of the circumstances here present.

Respondents, however, urge affirmance of the judgment on account of the failure of plaintiff to prove that the platform and ladders were the proximate cause of appellant's injuries. They argue that to reach this conclusion, the fact finder would have to base a verdict or finding on guess or conjecture. While at first blush, this may sound persuasive, it loses its potency in face of the photos and when you apply the safety orders. While it is true, as pointed out by respondents, there were no eyewitnesses to the accident and plaintiff has no memory of what occurred after she was in the kitchen until she found herself lying in the yard below, a crucial question arises as to whether the presence of a 42-inch top rail would have prevented her from falling over the rail to the yard below or whether the presence of a mid-rail would have prevented her from rolling off the platform to the yard below. It is conceivable that the jury could draw a reasonable inference that if appellant was out on the platform to retrieve her clothes from the line that she then suffered a blackout or fainting spell which either caused her to fall over the rail to the yard below or that she fell onto the platform and rolled off in the space between the top rail and the surface of the platform; that the presence of a 42-inch top rail or the presence of the mid-rail as required by the safety orders would have prevented this fall. Appellant's contention that this constitutes negligence as a matter of law is without merit. It merely presents an issue of fact for the court or jury to determine.

On the basis of facts similar to the instant case, the Supreme Court in *Burdette* v. *Rollefson Constr. Co.*, 52 Cal.2d 720, [344 P.2d 307], reversed the trial court's finding that the plaintiff failed to prove that the defendant's alleged negligence was the proximate cause of her injuries. Here, the plaintiff, accompanied by a friend, was preparing to leave her apartment.

She held the door open for her friend and paused to close the door. The friend had almost reached the top of the flight of 10 steps leading to the public sidewalk when she heard plaintiff's cries, turned, and saw the plaintiff lying on the public sidewalk. Plaintiff had no memory of what occurred after she closed the door until she found herself back in her apartment after the accident. There were no eyewitnesses to the accident. Under these circumstances, the court said that the only reasonable inference is that plaintiff lost her footing and then tumbled down the steep embankment to the public sidewalk below and that a guard rail would have prevented her from tumbling to the public sidewalk, whether or not it would have prevented her initial loss of footing. ''The crucial issue, therefore, is whether or not the accident occurred at a place where defendants were under a duty to provide a guard rail.'' The Building Code of the city of Los Angeles required guard rails for the platform and the flight of four steps. Said code also required, where a floor, roof or deck is accessible from a stairway or doorway and the floor, roof or deck is more than 4 feet above the adjoining ground or floor level, a protective guard rail shall be provided in such a manner as to separate completely the doorway from the edge of the floor, roof or deck and also enclose all traffic lanes and all equipment requiring periodic servicing. The court concluded by saying ''Since it appears as a matter of law, however, that defendants were negligent in failing to provide a railing for the platform, the stairway, *and* the private sidewalk, that plaintiff fell at one of those three places, and that a railing would have prevented her tumbling to the public sidewalk, the trial court's finding that defendants' negligence was not the proximate cause of her injuries cannot be sustained.''

It should be noted that this case was tried before the court and findings were made against defendants' negligence. The rule that every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the judgment of the trial court applied. Notwithstanding this rule, the Supreme Court reversed the trial court. Here, we are confronted with a different and much more relaxed rule, viz., that every legitimate inference deducible from the evidence must be drawn in favor of plaintiff on directing a verdict against her. The cases relied upon by respondents form the basis of the minority opinion in *Burdette, supra,* and while they are quite persuasive in support of that opinion, we must adhere to the conclusion expressed by the majority.

It is, therefore, our view that the trial court erred in directing a verdict in favor of defendant Reichel.

Finally, we turn to the appeal from the judgment in favor of Madeline Loomis. This respondent claims that there is no proof whatsoever that she had control of the platforms and ladders so as to render her liable. She further argues that she was charged in the complaint with negligent upkeep and installation and maintenance of said platforms and ladders and that not one of these allegations is supported by any evidence, let alone substantial evidence. She also relies upon *Burks* v. *Blackman, supra,* as supporting her position. At the outset of this opinion, we quoted the relevant provisions of her lease. It is to be noted that she is obligated to keep and maintain the premises and appurtenances "and every part thereof excepting the exterior walls and roof which the lessor agrees to repair." The question arises immediately as to whether the platforms and ladders are appurtenances. If so, she is in the same position as the owner. There is no evidence of her use of the platforms and stairways nor is there any evidence of her employees' use of said platforms and stairways except the one instance where her handy man who also was a tenant used the platforms and ladders at least on one occasion to retrieve a blanket that had fallen from the clothesline of one of the tenants. It is our view that if the platforms and ladders are appurtenances, respondent Loomis had control of them and the corresponding duty to maintain them.

In the case of *Van Rohr* v. *Neely,* 76 Cal.App.2d 713 at 715 [173 P.2d 828] the court defines appurtenances as follows:

"Webster's New International Dictionary defines an appurtenance as 'that which belongs to something else; . . . something annexed to another thing more worthy.' A thing is appurtenant to something else when it stands in the relation of an incident to and is necessarily connected with the use and enjoyment of the principal [citations] and agreeing in its nature and quality with the thing to which it is appendant or appurtenant. [Citations.] Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing. [Citations.]

"Nothing passes by the word 'appurtenances' except such rights or privileges as are strictly necessary and essential to the proper enjoyment of the estate granted, and a mere convenience is not sufficient to create such a right or easement. [Citation.] But what is included in a lease de-

mising houses and a store together with all appurtenances situated on certain lots is a question of fact . . .''

The court goes on further to say that parol evidence is admissible to show what was said and done in order to indicate what was intended by the parties to be included as appurtenances. In the instant case, no evidence was introduced to show what was intended by the parties to be included as an appurtenance. Moreover, as was said in the Van Rohr case, *supra*, ''It is obvious that the intent of the parties in using the term 'appurtenances' in the lease in question cannot be ascertained from a mere reading of the document.'' Since there is no proof as to what the parties intended by the use of the word appurtenances and no proof that respondent Loomis had control of the platforms and ladders or any obligation to keep them in repair, she owed no duty to appellant and as to her, the judgment of the trial court must be affirmed. Since the content of the police report is not necessary to the determination of the problems on appeal, we deem it unnecessary to pass upon the court's ruling as to the admissibility in evidence of said report. The judgment is reversed as to respondents Reichel, affirmed as to respondent Loomis.

Draper, Acting P. J., and Shoemaker, J., concurred.