[Civ. No. 24865. Second Dist., Div. Three. July 18, 1961.]

JOHN DI MURO, Respondent, v. MASTERSON TRUSAFE STEEL SCAFFOLD COMPANY, INC. (a Corporation) et al., Appellants.

786

Kirtland & Packard and Robert C. Packard for Appellants.

Joseph L. Spray, Jim Bentson and Spray, Gould & Bowers for Respondent.

VALLÉE, J.—Appeal by defendants Masterson Trusafe Steel Scaffold Company, called Masterson, and Long Beach Sandblasting Company, called Sandblasting, from a judgment for plaintiff entered on a unanimous verdict in an action for damages for personal injuries.

Plaintiff was a journeyman painter employed by J. F. Just Company. Just had a subcontract to paint a garage in Long Beach. Sandblasting was a subcontractor of Just. On February 16, 1957, Masterson, for a valuable consideration, rented a scaffold, also called a rolling stage, to Sandblasting. Sandblasting requested Masterson to deliver the scaffold without "hand or guard rails." Masterson's superintendent, Smith, made a notation on the rental order reading: "Doesn't want Guard Rails because of Trusses in Bldg." Masterson's superintendent testified it was Masterson's practice to send out guardrails with rolling stages and that the reason guardrails were not sent out in this case was because of the notation on the rental ticket. There was also evidence that Masterson determined that guardrails would not be supplied. Masterson delivered the scaffold to Sandblasting. As delivered, it was not assembled. No hand or guard rails were delivered. Sandblasting assembled the scaffold. It did "not put any hand or guard rail" on it. When assembled, the scaffold was a movable stage mounted on casters which was pushed from place to place. It was about 10 feet, 7 inches from the floor to the platform on which the worker stood. It was 5 feet wide and 10 feet long. A workman was assigned to move the scaffold from place to place in the building in order that a painter could paint an area not yet painted.

Sandblasting used the scaffold on the job on the Saturday and Sunday before the accident, which occurred on a Monday. At the completion of its work it left the scaffold on the site for use by Just's painters. Sandblasting's superintendent testified it was agreed that Just would furnish the "picks" and Sandblasting would furnish the scaffold and they would both use it. "Picks" are lightweight hollow plywood planks used to stand on when working at elevations. There was evidence that where sandblasting is done and painting follows it is customary for the sandblasters to leave their scaffolding for the painters.

About 10 a. m. on Monday, February 18, 1957, plaintiff was on the rolling stage spray-painting part of the ceiling. John Bladen was on the rafters, spray-painting them, about 30

to 35 feet from where plaintiff was working. Bladen testified: "Just a couple of minutes" before the accident he heard plaintiff call out that he was out of paint; plaintiff was standing erect on the rolling stage about the middle of it waiting for his pot to be filled; there were no beams or rafters above him and he was not near any beams; at about the position he was standing on the scaffold there was room enough to stand up and paint the ceiling. Bladen testified further: "About two minutes later I turned around and just happened to glance and I saw him falling towards the ground. He [plaintiff] was approximately halfway down," in the air; he (Bladen) heard no sound; the scaffold remained in the same position from the time he saw plaintiff on the scaffold and the time he saw him in the air; it remained stationary. There were no other witnesses to the fall. The platform of the scaffold was open on all sides at the time of the accident.

Plaintiff suffered severe injuries. He had no memory of his fall, nor of any of his activities for about an hour before it. He had worked on the scaffold the day before for about five hours. Plaintiff testified: "Q. Do you work with what they provide you? A. Yes. . . . Q. Now, when you came to work the day before, did you voluntarily go to work on one of these rolling stages? A. Voluntarily? Well, I don't know if I was told to go there or whether I walked over there or assumed that I should work there."

Guardrails would not have weighed over 10 pounds. They could have been put on in "A couple of minutes at the most" and could be taken down "in almost no time at all. You can get a grip on each side and lift all four posts off."

Melvin I. Masterson, Jr., was secretary-treasurer of both Masterson and Sandblasting and answered interrogatories on behalf of both. Both companies occupied the same office and some employees were interchanged from time to time.

The court and jury viewed the premises. There Bladen testified to the position of the scaffold at the time plaintiff fell, to the position of plaintiff on the scaffold when he last saw him before the accident, to the approximate spot where plaintiff struck the floor, and to his own position when he saw plaintiff standing erect on the scaffold and when he saw plaintiff falling.

The first assignment of error is that, as to Masterson, the record is devoid of any actionable negligence as no privity existed between Masterson and plaintiff's employer, Just.

■■■ It is of course elementary that a supplier of a chattel alleged to have caused injury cannot be liable unless there has been a breach by the supplier of a duty running in favor of the injured person. (35 Cal.Jur.2d, § 10, p. 495.)

■■ "The courts of this state are committed to the doctrine that the duty of care exists in the absence of privity of contract not only where the article manufactured is inherently dangerous but also where it is reasonably certain, if negligently manufactured or constructed, to place life and limb in peril." (*Sheward* v. *Virtue*, 20 Cal.2d 410, 412 [126 P.2d 345]; *Hale* v. *Depaoli*, 33 Cal.2d 228, 230-231 [201 P.2d 1, 13 A.L.R.2d 183]; *Dow* v. *Holly Mfg. Co.*, 49 Cal.2d 720, 724-727 [321 P.2d 736]; *Stewart* v. *Cox*, 55 Cal.2d 857, 861-862 [13 Cal.Rptr. 521, 362 P.2d 345]; *Larramendy* v. *Myres*, 126 Cal.App.2d 636, 640 [272 P.2d 824].)

The Division of Industrial Safety, pursuant to authority granted by sections 6312 and 6500 of the Labor Code, has prescribed the safety orders with respect to scaffolds quoted in the footnote.[1] Labor Code, section 6506, reads:

---

[1]. "(a) Standard railings shall be provided on all open sides and ends of all built-up scaffolds, runways, ramps, rolling scaffolds, elevated platforms, or other elevations ten feet (10′) or more above the ground or floor.

"Exceptions—Interior scaffolds without open sides, riveters' platforms, ladder jack and horse scaffolds.

"(b) Toeboards shall be solid and extend not less than six inches (6″) high above the top of platform and shall be provided on all open sides of all bricklayers, stonemasons, or scaffolds having tools and loose material.

"(c) Side Screens: If material on a scaffold is piled higher than the toeboard, one-half inch (½″) wire mesh or canvas or equivalent shall be provided between the railing and toeboard, and secured both top and bottom." (Cal. Admin. Code, tit. 8, § 1596.)

2. "Design of Temporary Railing: Railings required by these orders, except as otherwise provided, shall conform to the following standards:

"(a) Railings shall be constructed of wood, as follows, or in an equally substantial manner from other materials, and shall be not less than forty-two inches (42″) nor more than forty-five inches (45″) in height from the upper surface of the top rail to platform or working level. Additional rails may be added if desired. 'Selected Lumber' (see definitions), free from damage that affects its strength, shall be used for railings constructed of wood.

"(b) Wooden posts shall be not less than two inches by four inches (2″ x 4″) in cross section, spaced at eight feet (8′) or closer intervals.

"(c) Top railings shall be smooth and of two-inch by four inches (2″ x 4″) or larger material. Double one-inch by four-inches (1″ x 4″) members may be used for this purpose, provided that one member is fastened in a flat position on top of the posts and the other fastened in an edge-up position to the inside of the posts and the side of the top

"Every person shall comply with every order, decision, direction, rule, or regulation made or prescribed as specified in this part and in any way relating to or affecting safety of employments or places of employment or to protect the life and safety of employees in such employments or places of employment. Every person shall do everything necessary or proper in order to secure compliance with, and observance of, every such order, decision, direction, rule, or regulation."

The safety orders were enacted for the protection of the class of which plaintiff was a member. They establish the duty of defendants. (*Bragg* v. *Mobilhome Co.*, 145 Cal.App. 2d 326, 329-332 [302 P.2d 424].) Defendants had the responsibility of complying with the quoted safety orders and of providing guardrails as to any scaffold to be used by workmen. (*Hall* v. *Paul Bunyan Lbr. Co.*, 177 Cal.App.2d 761, 764 [2 Cal.Rptr. 519].) ■ Violation of such an order constitutes negligence *per se*. (*Nungaray* v. *Pleasant Valley etc. Assn.*, 142 Cal.App.2d 653, 663 [300 P.2d 285].)

■ It is not essential to applicability of a safety order that any benefit be conferred by the injured worker or his employer on the party violating the order. (*Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846, 850 [313 P.2d 854].)

*Hyde* v. *Russell & Russell, Inc.*, 176 Cal.App.2d 578 [1 Cal. Rptr. 631], is factually the nearest to the case at bar. The action was by a subcontractor's employee against the defendant, which was engaged in leasing scaffolding, for personal injuries sustained when the employee fell from a scaffold leased to his employer by the defendant. The backrails supplied by the defendant were round metal instead of rectangular wood, as required by a safety order of the Division of Industrial Safety. As the plaintiff and his coworker were changing positions on the scaffold, the left end of the tubular safety rail slipped out of the bracket which previously had held it;

member. Railings may be improved by the addition of a midrail, which is required only in some cases.

"(See 1615(d).)

"(d) Railings on scaffold platforms shall not be farther than eight inches (8″) horizontally from the outside edge of scaffold planking, unless the guardrail is improved by the addition of a midrail, in which case the distance may be as much as sixteen inches (16″).

"(e) The rails shall be placed on that side of the post which will afford the greatest support and protection.

"(f) Light wood barrier members resting on barrels, boxes, or other makeshift supports shall not be used as a railing substitute." (Cal. Admin. Code, tit. 8, § 1615.)

and the plaintiff fell over backward to the ground below. The court stated (p. 586):

"[I]n *Porter* v. *Montgomery Ward & Co., Inc., supra* [48 Cal.2d 846], we have a clearcut holding that a safety order, issued under the authority of the same constitutional and statutory provisions which authorized the issuance of the safety order involved in the case at bar, affected the rights and duties of parties between whom there was no relationship of employer and employee. . . .

"We think that any 'reasonable limitation' upon the reach of the safety order in question would include within its ambit the defendant as a professional supplier of scaffolding equipment. We are unable to comprehend defendant's contention that it lacked 'control' over the scaffolding in any sense essential to its ability to comply with the safety order. Indeed, if the salutary requirements of the safety order for the providing of safe guard rails on this type of equipment deserve effective enforcement, it is difficult to understand why a professional supplier of such equipment should be exempted from the duty of compliance."

There is no question but that Masterson was negligent. It had a duty to supply a scaffold with guardrails. Its duty was nondelegable. (*Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793, 801-802 [285 P.2d 912].) It did not rest on the contract of bailment but arose from the obligation which the safety orders imposed. When a safety order is violated and one of the protected class is injured, his suit is a common law action for tort in which the defendant's standard of care is fixed by the safety order. Masterson supplied the scaffold without guardrails, knowing it was going to be used in violation of the safety orders. By not complying with the safety orders it created an imminently dangerous condition. (*Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App. 2d 815, 820 [263 P.2d 32].) Its wrongdoing continued to be potentially active until the accident. The danger created by a scaffold without guardrails and the foreseeable risk that it would be used without guardrails fully justify imposing the duty on the supplier to comply with the safety orders to protect workers that might use it.

The second assignment of error is that as a matter of law the negligence of Masterson and the negligence of Sandblasting were not, because of superseding causes, proximate causes of the injury.

The question with respect to Masterson is whether the request by Sandblasting for a scaffold without guardrails and its use by Sandblasting and subsequently by Just with knowledge of the absence of guardrails constituted independent superseding causes breaking the line of causation of Masterson's negligence, thus relieving Masterson of liability. And the question with respect to Sandblasting is whether the use of the scaffold by Just with knowledge of the absence of guardrails constituted an independent superseding cause breaking the line of causation of Sandblasting's negligence, thus relieving it of liability.

The test of whether negligent conduct by one tortfeasor is to be insulated as a matter of law by an independent act or omission of another is whether the author of the primary negligence should have reasonably foreseen the intervening act or omission. The original actor's duty is measured by the standard of foreseeability in the eyes of a reasonably prudent person having regard for the accompanying circumstances. (*Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132].)

It is the settled rule that the intervening act of a third person does not relieve the original wrongdoer of liability if the intervening act was a reasonably foreseeable result of the actor's wrongdoing. (*Davis* v. *Erickson,* 53 Cal. 2d 860, 863 [350 P.2d 535].) "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (*Richardson* v. *Ham,* 44 Cal.2d 772, 777 [285 P.2d 269].) In *Stewart* v. *Cox,* 55 Cal.2d 857 [13 Cal. Rptr. 521, 362 P.2d 345], it is stated (p. 864):

"The fact that a third person does not perform his duty to protect the plaintiff from harm, either because he makes no effort or through his negligence does not succeed, is not a superseding cause. (Rest., Torts, § 452.)"

If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate concurring cause for which liability may be imposed. (*Gibson* v. *Garcia,* 96 Cal.App.2d 681, 684 [216 P.2d 119].)

The applicable principles are stated in *Ferroggiaro* v. *Bowline*, 153 Cal.App.2d 759 (p. 763) [315 P.2d 446]:

"A defendant may be negligent for failing to guard against an intervening cause which in ordinary human experience is reasonably to be anticipated or which the defendant has reason to anticipate. In other words, the risk created by the original act of negligence may include the intervention of the foreseeable negligence of others. (Prosser on Torts, 2d ed., p. 268 et seq.) The fact that the intervening act of a third person is a negligent one will not make it a superseding cause of harm to another for an injury which the original actor helped to bring about, if the original actor at the time of his negligent conduct should have realized that a third person might so act. [Citation.] That is, the defendant will be held liable for the damages resulting from the intervening cause that he could foresee, or for those which are the normal results of the risk he has created. . . .

"[P. 764.] In *Jones* v. *City of South San Francisco*, 96 Cal.App.2d 427 [216 P.2d 25], in applying this rule to such a situation the court stated (p. 435) : 'It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law. The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen.' " (Also see *Parker* v. *City & County of San Francisco*, 158 Cal. App.2d 597 [323 P.2d 108]. That the question whether an intervening act is a concurrent cause or a superseding cause of the injury normally presents a question of fact, also see *Gibson* v. *Garcia*, 96 Cal.App.2d 681, 687 [216 P.2d 119] ; *Brooks* v. *Allis-Chalmers Mfg. Co.*, 163 Cal.App. 2d 410, 414 [329 P.2d 575].)

Sandblasting was not a gratuitous bailor, as defendants assert. As previously noted, Sandblasting was a subcontractor of Just and it was agreed between them that Just would furnish the "picks" and Sandblasting would furnish the scaffold. Both Masterson and Sandblasting knew the purpose for which the scaffold was to be used and knew or should have known it was a violation of the safety orders to use it without guardrails. The purpose of guardrails was to prevent the one using the scaffold from stepping or falling from it. The failure to provide guardrails would be "reason-

ably certain to place life and limb in peril." (*Hale* v. *Depaoli*, 33 Cal.2d 228, 231 [201 P.2d 1, 13 A.L.R.2d 183].) In view of the evidence that it is customary when sandblasting is done and painters follow that the sandblasters leave the scaffold for the painters, the question whether Masterson knew or should have known the scaffold would be used not only by Sandblasting and its employees but also by Just and its employees was a factual question for the jury. (*Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244, 247-248 [223 P.2d 293].) We cannot say as a matter of law that either the failure of Sandblasting to provide guardrails or the failure of Just in that respect constituted an independent, intervening cause neither foreseeable nor one of the dangers against which the safety orders were designed. (Rest., Torts, § 434; *Gibson* v. *Garcia*, 96 Cal.App.2d 681, 687 [216 P.2d 119] ; *Osborn* v. *City of Whittier*, 103 Cal.App.2d 609, 616 [230 P.2d 132] ; *DeMirjian* v. *Ideal Heating Corp.*, 129 Cal. App.2d 758, 773 [278 P.2d 114] ; *Brooks* v. *Allis-Chalmers Mfg. Co.*, 163 Cal.App.2d 410, 414 [329 P.2d 575] ; *Bilyeu* v. *Standard Freight Lines*, 182 Cal.App.2d 536, 542 [6 Cal. Rptr. 65].)

*Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688 [59 P.2d 100], relied on by defendants, is not analogous. Stultz was a case in which it was held the negligent act was not foreseeable. (See *Edison* v. *Lewis Mfg. Co.*, 168 Cal.App.2d 429, 436 [336 P.2d 286].) It did not involve the violation of a safety order. At bar, the safety orders set a standard of conduct not present in Stultz. Other cases cited by defendants are not parallel.[2] In them there was no duty to a third person on the defendant charged with negligence. At bar, as we have seen, the safety orders imposed a duty on both Masterson and Sandblasting.

Defendants' third assignment of error is that because it was not practicable to use guardrails, defendants' duty was excused as a matter of law. The court read section 6506 of the Labor Code and the safety orders quoted, *supra*, to the jury. He told the jury that if any party to the action violated any safety order read to them, a presumption arises that he was negligent; that the presumption is not conclusive and may be overcome by other evidence showing that under

[2]The other cases cited by defendants are: *Youtz* v. *Thompson Tire Co.*, 46 Cal.App.2d 672 [116 P.2d 636]; *Jones* v. *Hartman Beverage Co.*, 29 Tenn.App. 265 [203 S.W.2d 166]; *Blankenship* v. *St. Joseph Fuel Oil & Mfg. Co.*, 360 Mo. 1171 [232 S.W.2d 954].

all the circumstances the conduct in question was excusable or justifiable; that to prove a violation of a safety order such as that charged was excusable or justifiable so as to overcome the presumption of negligence "the evidence must support a finding that the person who violated the safety order did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances."

The assignment of error is an indirect assertion that it was error to permit the jury to determine the question whether the presumption of negligence had been overcome, and thus that it was error to give the instruction with respect to the proof necessary to overcome the presumption of negligence. Defendants cannot complain of the giving of the instruction. It was given at the request of plaintiff and defendants. Furthermore, there was testimony and the view of the premises from which the jury could have concluded it was practicable to use guardrails. Whether the violation of the safety orders was justified or excused was a question of fact and not of law. (*Irvin* v. *Padelford,* 127 Cal.App.2d 135, 141 [273 P.2d 539].) Neither excuse nor justification was shown as a matter of law.

The fourth assignment of error is that there was no evidence that noncompliance with the safety orders was a proximate cause of plaintiff's injury. In this respect it is argued there was no evidence plaintiff actually fell from the scaffold. Since defendants were negligent in failing to provide guardrails, and plaintiff was seen on the scaffold waiting for his paint pot to be filled two minutes before he was seen falling, the implied finding of the jury that the negligence of each defendant was a proximate cause of plaintiff's injuries is sustained. (*Burdette* v. *Rollefson Construction Co.,* 52 Cal. 2d 720, 726 [344 P.2d 307]; *Schumann* v. *C. R. Reichel Engineering Co.,* 187 Cal.App.2d 309, 317-318 [9 Cal.Rptr. 486]. Also see *Hall* v. *Paul Bunyan Lumber Co.,* 177 Cal.App. 2d 761, 765 [2 Cal.Rptr. 519].)

The fifth assignment of error is that plaintiff was contributively negligent as a matter of law. The point is untenable. Contributory negligence is "not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one

against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.'' (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], and cases therein cited.) Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence the question is one of fact for the jury. (*Bady* v. *Detwiler*, 127 Cal.App.2d 321, 339 [273 P.2d 941].)

It is argued that plaintiff knew the danger of using the scaffold without guardrails. ''Knowledge that danger exists is not knowledge of the amount of danger necessary to charge a person with negligence.'' (*Johnson* v. *Nicholson*, 159 Cal.App.2d 395, 410 [324 P.2d 307]. Also see *Brooks* v. *Allis-Chalmers Mfg. Co.*, 163 Cal.App.2d 410, 415 [329 P.2d 575].) While it must have been apparent to plaintiff that it was more dangerous to work on the platform without guardrails, nevertheless a workman on the job doing the job he is hired to do is not required to exercise the same quantum of care that may be required of other invitees. '' '[W]here a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work·than would otherwise be the case.' '' (*Hall* v. *Paul Bunyan Lumber Co.*, 177 Cal.App.2d 761, 766 [2 Cal. Rptr. 519].) Since plaintiff suffered amnesia, he is presumed to have been acting with due care for his own safety at the time of the accident. (*Burdette* v. *Rollefson Construction Co.*, 52 Cal.2d 720, 723 [344 P.2d 307]; *Spencer* v. *Beatty Safway Scaffold Co.*, 141 Cal.App.2d 875, 880 [297 P.2d 746].) Assumption of the risk by plaintiff is not a defense to an action based on violation of a safety order intended to protect him against the risk. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 430-431 [218 P.2d 17]; 35 Cal.Jur.2d § 271, p. 819.) Defendants confuse contributory negligence with assumption of risk. It cannot be said as a matter of law that plaintiff was contributively negligent. *Burdette* v. *Rollefson Construction Co.*, 52 Cal.2d 720, 723, 726 [344 P.2d 307]; *Schumann* v. *C. R. Reichel Engineering Co.*, 187 Cal.App.2d 309, 317-318 [9 Cal.Rptr. 486].)

 The sixth assignment of error is the giving of BAJI 135-B with respect to loss of memory and 138.2 with respect to the right to assume others' good conduct, quoted in the

footnote³, at plaintiff's request. It is asserted it was error to give the instructions because plaintiff climbed on the scaffold about two hours before he fell and because he testified about his activities from that time until about an hour before he fell. The point is based on the erroneous assumption that plaintiff was contributively negligent as a matter of law, and is therefore untenable. (*Hall* v. *Paul Bunyan Lumber Co.*, 177 Cal.App.2d 761, 765-766 [2 Cal.Rptr. 519]; *Zollars* v. *Barber*, 140 Cal.App.2d 502, 507 [295 P.2d 561].)

The seventh assignment of error is that the court should have instructed the jury on the weight to be accorded the presumptions of negligence and of the exercise of ordinary care by plaintiff in respect to the burden of proof. Inasmuch as defendants did not proffer an instruction on the subject, they may not complain.

The case was well and fairly tried. The jury was fully, fairly, and accurately instructed on all principles of law applicable to the evidence. In fact, the court gave all instructions requested by defendants. We find no merit in any of the assignments of error.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied August 17, 1961, and appellants' petition for a hearing by the Supreme Court was denied September 13, 1961.

---

³BAJI 135-B: "If you find that plaintiff, John DiMuro, in this case suffered a loss of memory so as to be unable to testify as to his conduct at the time of and immediately preceding the accident here in question, then I instruct you that the law presumes that John DiMuro in his conduct at the time of and immediately preceding the accident was exercising ordinary care and was obeying the law.

"These presumptions are a form of evidence. Each will support a finding in accord with the presumption where there is no proof to the contrary and each will support such a finding in the face of contrary evidence if your judgment so directs after weighing the conflicting evidence.

"When such a conflict exists, it is the jury's duty to weigh the presumption (and any evidence that may support it) against the contrary evidence and to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof."

BAJI 138.2: "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to assume that he is not exposed to danger which can come to him only from a violation of law or duty by another person."