THE COURT.
Action by plaintiff to. recover rent under lease, and damages to the demised premises. From a judgment in favor of plaintiff, defendants appeal.
*Supp. 785 The complaint is in two counts: The first alleges that the parties entered into an agreement in writing whereby plaintiff leased to defendants certain premises in the city of Inglewood for a term beginning February 19, 1949, and ending December 31, 1949, with an option to defendants to extend the term for one year from December 31, 1949, at a rental of $50 per month; that defendants entered into possession of the premises and occupied the same until April 21, 1952; that defendants failed to pay the rent which accrued under the terms of said lease, in the sum of $350; that by the terms of said lease “defendants expressly covenanted and agreed to make whatever repairs might be necessary, and to repair to a usable state, at their own cost and expense, the floor of said building, it being agreed and understood . . . that the damage caused to said floor and to the girders and under-portions of said floor by dry-rot would be repaired by the defendants and said floor made safe and usable, and it was further understood and agreed . . . that the defendants would, at their cost and expense, maintain said building in a reasonable state of repair”; that defendants failed to repair the floor and the roof, permitting water to drain through the roof and into the plaster; caused electrical wiring to be “cut, pulled and damaged; have broken and removed doors, . . . the front' portions of the garage buildings; . . . removed the doors from one of said garages; . . . caused and permitted trucks operated by their employees to be driven into the side of said building whereby a large hold has been driven through said wall”; and “have broken or caused or permitted to be broken a large number of window panes,” all to plaintiff’s damage in the sum of $3,000.
The second cause of action repeats the allegations of the first as to the execution of the lease, the entry of defendants into possession and defendants’ default in the payment of rent accrued. However, it omits the allegations of the first count with respect to defendants’ covenant to repair, and proceeds to allege that defendants caused and permitted waste to the demised premises in that defendants failed to keep the roof in repair, knowing that water was leaking through the roof and causing the plaster on the walls and ceiling to become loose and to fall, and the walls and floor to rot; that defendants caused and permitted the electrical wiring and fixtures to be damaged, wires to be cut and fixtures removed; that defendants broke and damaged the rear door and removed *Supp. 786 two interior doors; that defendants caused and permitted motor vehicles owned and operated by them to be driven into and against the walls and doors of the garage buildings and the walls of the “front building” in such manner as to damage the same; that defendants have caused and permitted glass to be broken in windows and doors, and by reason of repairs required to repair the damage occasioned by defendants, portions of the exterior of the buildings will require to be painted; all to plaintiff’s damage in the sum of $3,000—the complaint, however, waiving any right to recover any sum in excess of $3,000.
The trial court found all of the allegations which we have summarized above to be true, with the single exception that “the painting of the entire exterior of the said building has not been made necessary by reason of any act of neglect on the part of the defendants,” and entered judgment in favor of plaintiff in the sum of $3,000. The defendants challenge the sufficiency of the evidence to support the findings (1) as to the terms of the lease with respect to defendants’ obligation to repair, and (2) the damage found to have been occasioned to the premises by the defendants. We are in accord with defendants’ contention, and are reversing the judgment.
Relevant to the problem before us is the condition of the premises at the time of the letting (Roberts v. Freeborn, 2 N.Y.S. 56), and while the evidence as to this is in some respects conflicting, the following is made to appear.
The improvements on the demised premises consist of a residence and two garages. The front portion of the residence was constructed in 1923 and the rear portion—connected to the front by a covered porch—some two years later. All of the buildings are of frame construction, the floor of the front portion resting upon the ground and that of the rear portion, which is slightly higher, is very little above the ground. Sometime about 1925 or 1926 the then owner of the premises built a small frame addition on the east side of the residence, which was occupied as a barbershop. In 1933 a severe explosion occurred in the barbershop, completely demolishing it and seriously affecting the whole building to which it was attached. The record is replete with testimony by former owners and occupants of the building to the effect that prior to its sale to plaintiff in August, 1947, it was in a deteriorated state, to say the least. Particularly the floor of the front *Supp. 787 portion of the residence had a hole in it of some size as a result of dry rot which a witness for plaintiff testified had been present for a period of four to seven years prior to the trial. Plaintiff purchased the property without making any inspection of the improvements thereon, as he desired the site for a contemplated radio station.
In February, 1949/ when the property was vacant, having been unoccupied and seemingly unattended since August, 1948, the defendants, whose place of business was in the immediate vicinity, approached plaintiff with the view of leasing the same for storage purposes, with the result that the parties executed a writing of which the following is a copy.
“February 12, 1949.
“Mr. Wm. H. Haupt, Attorney
458 South Spring Street
Los Angeles, California “Dear Mr. Haupt Be: Building at
737 Bast Hyde Park Blvd., Inglewood, California
“Do you care to rent the building to us at the above address for $50.00 per month. We will make whatever repairs are necessary to the floor without charge to you and sign a waiver of responsibility in respect to any accidents by reason of disrepair of the floor. '
“Also, if you wish we will provide a guarantee to repair any damage that may occur if floors are overloaded.
“We would use the building for storage of light, materials that have considerable bulk, such as registers used in our business, tin pipe of considerable bulk and practically no weight, etc.
“If the building is rented, we intend to repair the floor to a usable state without expense to you.
“Tours truly,
“ (signed) Frank M. Kriwanek Frank M. Kriwanek General Manager
“FML/cm
“Above property is rented under the terms above stated, for the period from date to Dec. 31, 1949, with option to lessee to renew for a further year, at same rental, provided that if lessor shall be required to construct a radio station on said property under rule of Federal Communications Commission, *Supp. 788 possession of rear building may be had on six months prior written notice, with proportionate reduction in rent.
Dated February 19, 1949.
“ (signed) Wm. H. Haupt—Lessor La Brea Heating & Air Conditioning Co., 734 East Hyde Park Blvd., Inglewood “ (signed) Frank M.' Kriwanek Frank M. Kriwanek General Manager”
The foregoing agreement is the measure of defendants’ express obligation to repair, for although plaintiff attempted to testify to conversations preceding its execution, the effect of which would be to extend defendants’ obligation in this particular, such testimony was incompetent and must be disregarded. (Hale v. Bohannon (1952), 38 Cal.2d 458, 465 [241 P.2d 4].)
At the outset it should be noted that there is no claim that • any damage was occasioned to the floor by overloading, and there is nothing in the agreement to support the trial court’s finding that defendants “would at their cost & expense maintain said bldg in a reasonable state of repair.” The sole obligation in this respect is the promise to “make whatever repairs are necessary to the floor” and “to repair the floor to a usable state.” To the extent that defendants failed to do this, they are liable, but the judgment upon the first count of the complaint, founded as it is upon a finding that the defendants agreed to maintain the premises in repair, cannot stand, particularly in view of the fact that the amount of the judgment is predicated upon evidence as to the cost of constructing a new floor, a new roof, and to repair the premises in other particulars.
Nor is the result avoided by reason of the fact that the court found substantially all of the allegations of the second count to be true. Absent an express covenant by a tenant to repair, his sole obligation in the premises is that set forth in Civil Code sections 1928 and 1929, which read as follows: “1928. The hirer of a thing must use ordinary care for its preservation in safety and in good condition.” “1929. The hirer of a thing must repair all deteriorations or injuries thereto occasioned by his want of ordinary care.”
There is nothing in the foregoing statutory provisions to suggest that, in the absence of an express covenant so to do, a tenant is obligated to restore the premises to his landlord at the end of his term in better condition than they were in *Supp. 789 at the inception of the tenancy. Otherwise stated, a tenant’s duty in such circumstances is to restore the premises to the lessor unimpaired beyond ordinary wear and tear. If, at the time of the letting, the roof was old and worn, certainly defendants were not required to repair the same and should not be held liable for the cost of a new roof nor for damages occasioned by rainwater finding its way into the premises. (See note 64 L.R.A. p. 649, and cases there cited.) The witness who undertook to testify as to the cost of “repairing” the roofs upon the residence and garages had no knowledge as to their condition at the time the premises were let to the defendants. His testimony as to the condition of the roofs was as of a time immediately preceding the trial, when he stated that the roof on the residence was full of holes and that the garage had no roofing at all—“not even wood to put any roofing on, ” as a consequence of which he said new roofs would be required involving a cost of $425. It is significant also that he neither looked at the roof nor was he advised of its age or of the character of the roofing material. He said the roof of the residence was full of holes because he .saw evidence of “rain marks on the ceilings.” And with respect to the floor in the residence, he testified that except for the hole in the northeast corner occasioned by dry rot, the condition of the front portion of the floor was “not had.” From this it is apparent that his testimony that it would be necessary to put in an entirely new floor was predicated upon the hypothesis that this was required in order to put the same in first-class condition—not to repair the hole therein and restore it to the condition in which it was at the time of the letting and ordinary wear and tear to which it would normally he subjected during defendants’ occupancy of the premises. The same may be said of damage occasioned to the plastering, walls and floors occasioned by rainwater leaking through the roof.
Defendants complain that the trial court erred in finding that defendants were liable for rent through and including the month beginning May 19, 1952. While it is true that defendants introduced evidence to the effect that they vacated the premises on February 18, 1952, pursuant to their written notice to this effect, there was other evidence from which the court could properly conclude, as it did, that defendants remained in possession subsequent to May 19, and we see no occasion to disturb the trial court’s finding in this regard.
*Supp. 790 Nor do we find any merit in defendants’ contention that the lease is illegal because it permitted use of the premises for the storing of defendants’ merchandise and supplies.
The storage was incidental to their lawful business and was not'a business, or use, in itself. Such use was not, as claimed by defendants, violative of the zoning ordinance (§ 10A, 8h of Ord. 925) Of the city of Inglewood. (Dugan v. McArdle (1918), 184 App.Div. 570 [172 N.Y.S. 27] ; Walsh v. F. W. Woolworth Co. (1917), 167 N.Y.S. 394.)
The judgment is reversed.