Filed 1/21/22
Corrected version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LYDIA KANEY, | B302835 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC619247) |
| v. | |
| CAROL A. CUSTANCE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jon R. Takasugi, Judge.  Reversed.

B&D Law Group, Daniel D. Geoulla, Marcelle A. Obeid, Babak Kheiri and Arian Barkhordar for Plaintiff and Appellant.

Ford, Walker, Haggerty & Behar, Armen A. Avakian and Ashley S. Loeb for Defendant and Respondent.

Horvitz & Levy, Frederic D. Cohen, Steven S. Fleischman and Rebecca G. Powell for The Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

_____

Is a plaintiff barred as a matter of law from proving causation in a slip and fall case if there were no witnesses to the fall and he or she remembers being on stairs[1] and then waking up in pain but does not remember the fall itself? No. That is not the law in California. We conclude that the trial court erred when it granted summary judgment in favor of defendant Shirley B. Cassell (Cassell)[2] on the negligence complaint filed by Lydia Kaney (appellant). Though appellant cannot remember falling on Cassell's stairs, the circumstantial evidence would permit a trier of fact to make a reasonable and probable inference that the condition of the stairs, including the absence of a handrail, was a substantial factor in the fall.[3]

**FACTS**

**Background**

Cassell owned a residential property (property) in the City of Hermosa Beach (City) since 1972. The property has one

---

[1]     We use "stairs" and "stairway" interchangeably when referring to the stairs that appellant was using just prior to her fall.

[2]     Cassell was the original respondent in this appeal. She passed away and we appointed Carol A. Custance (respondent) as Cassell's successor in interest and substituted her in as the respondent in this matter pursuant to California Rules of Court, rule 8.36(a).

[3]     Appellant seeks review of the denial of a motion for new trial as well as summary judgment. Because we conclude that the trial court erred when it granted summary judgment, denial of the new trial motion is moot.

2

bathroom, which has a two-step stairway leading up to a platform with a commode.

The stairway did not have a handrail.

Appellant's sister, Marilyn Mazza (Mazza), rented the property from Cassell for approximately 18 years, and over that time appellant visited Mazza on multiple occasions. Sometimes appellant would stay for as long as 10 days to two weeks. She used the bathroom during her visits, and did so without any mishaps.

In September 2014, appellant was visiting Mazza and used the bathroom up to five times. At some point, the light to the bathroom stopped working. Appellant used the stairs, fell, and suffered injuries.

**The Complaint**

Appellant filed a form complaint in 2016 against Mazza and Doe defendants. The complaint set forth causes of action for premises liability and negligence. It alleged: "[Appellant] was lawfully on [the defendants'] premises when . . . [she] tripped and fell in the bathroom. [The defendants] failed to remedy, remove, alleviate, and/or warn of the hazard, thereby creating a dangerous condition on [the defendants'] premises. As a result, [the defendants] caused . . . [appellant] to suffer personal injuries[.]" Appellant amended her complaint to substitute Cassell in for a Doe.

According to the complaint, the defendants owed appellant legal duties, breached them and thereby caused damages. Alternatively, it alleged that the defendants "violated [the American's with Disabilities Act] (ADA), California Health & Safety Codes [*sic*], building codes, and/or ordinances," appellant

was in the class of persons protected by those laws, and the violations caused her damages.

**Mazza's Settlement**

Mazza settled for $300,000.

**Cassell's Motion for Summary Judgment**

Moving Papers

Cassell argued: (1) she had no duty to warn appellant of the open and obvious dangerous stairs leading to the commode; (2) she had no duty to remedy the open and obvious dangerous condition because she was never given notice that the stairs were dangerous or needed repair; (3) she was not given notice that there was a problem with the bathroom light, which allegedly contributed to appellant's fall; (4) contrary to appellant's position, the stairs did not violate any codes and Cassell did not have a statutory duty to change them because they were "grandfathered in" as a permissible nonconforming use under City of Hermosa Beach Municipal Code section 17.52.020;[4] and (5) there were no triable issues as to causation because appellant does not remember how she fell, and the only evidence of causation was

---

[4]     Section 17.52.020 of the City of Hermosa Beach Municipal Code provides: "The nonconforming use of a building may be continued, provided any structural alteration or expansion shall comply with Section 17.52.030. [¶] . . . [¶] A nonconforming structure may be maintained and the use therein continued, provided any structural alteration or expansion shall comply with Section 17.52.030. [¶] Routine maintenance and repairs, repairs and/or replacement to plumbing, electrical wiring and similar work, shall not be considered structural alterations within the meaning of this Chapter, and may be performed on nonconforming structures and buildings containing nonconforming uses."

4

Mazza's deposition testimony that her worn out bath mat may have been the cause of appellant's fall.  In support, Cassell adverted to her declaration and the depositions of Robert Rollins (Rollins) and Mazza.

Rollins was a Building and Code Enforcement Official for the City of Hermosa Beach.  He testified regarding a Report of Residential Building Record dated October 19, 1972, that pertained to the property.  It was generated when the property was sold to Cassell and referenced the property's historical activities.  The report indicated "'city condemnation required that [the property] be brought up to minimum code,'" and that all "work [was] completed and given okay 7-10-70."  The "Permit Record" section of the report referenced a plumbing permit and an electrical permit.[5]  Rollins assumed that "there were substandard plumbing and electrical conditions in [the] property prior to the corrective actions."  There was no record of any nonconformities or code violations other than those that had been noted and corrected.

Per Rollins, the report informed Cassell that the property was up to code as of October 19, 1972.

Generally, Rollins explained that if a house was built long ago with stairs that did not comply with the applicable building code, it would be a preexisting nonconformity.  Some people refer

---

[5]    Appellant argued that Cassell purchased the property in 1970 and did the work that was completed and approved as of July 10, 1970.  Given that Cassell declared that she purchased the property in 1972, and that Rollins said the October 19, 1972, Report of Residential Building Record was generated when the property was sold, the inference is that the previous owner did the remedial work.

to this as being "grandfathered."  The code would not require corrective action.

According to Rollins, the stairway did not comply with the ADA requirements for wheelchair access to the commode.  But he noted that the ADA did not apply to the property because it was a single-family home.

Mazza testified that the stairs never changed during the time she rented the property.  In her declaration, Cassell stated, "The design, construction, and condition of the Property, including but not limited to the bathroom steps and bathroom light, was the same on September 3, 2014[,] as it was when I first purchased the Property.  I did not make, or cause to be made, any structural alterations, expansions, improvements, or other changes to the bathroom steps or bathroom light since I purchased the Property."

Separate Statement No. 20 stated:  "[Appellant] does not remember falling, how she fell, or what caused her to fall."  Cassell cited excerpts from appellant's deposition in support.  She testified:  On the night of her fall, the light in the bathroom was not working.  She remembered "going up to the bathroom . . . and having pain and waking up on the floor."  Also, she started down the stairs and, to the best of her recollection, she fell.  She could not remember if she fell backwards, and she could not remember slipping on anything immediately before her fall.  At one point, appellant broadly stated, "I don't have a full remembrance.  Somehow, all of that is blocked out."  Defense counsel asked if she remembered how many steps she took after using the bathroom and before falling.  She did not recall.  He asked if she remembered missing a step before her fall, and she replied, "I was not aware of any of that."

Separate Statement No. 21 stated, "The only evidence regarding causation is from Mazza's testimony that her worn out bath mat may have been the cause of [appellant's] slip-and-fall because the rubber traction on the bottom of the bath mat was worn away." Mazza testified that there was a bath mat in the bathroom the night appellant fell, and that it was around the base of the commode. She stated that the "mat was screwed on the backside, and I threw it away after [appellant] fell because I thought that may have had something to do with it." Mazza added that she was aware the rug did not have a "whole lot of traction[.]"

Opposing Papers

Appellant opposed the motion and argued that it had to be denied because there were triable issues as to whether Cassell breached ordinary and statutory duties by failing to maintain the stairs in a safe and habitable condition. According to appellant: (1) Cassell had a duty to remedy the stairway under the implied warranty of habitability and Civil Code sections 1941 and 1941.1[6] regardless of notice;[7] (2) the failure to maintain a building in a

---

[6] "The lessor of a building intended for occupation of human beings must, in the absence of an agreement to the contrary, put it into a condition fit for occupation, and repair all subsequent dilapidations thereof, which render it untenantable[.]" (Civ. Code, § 1941.) A dwelling shall be deemed untenantable for purposes of Civil Code section 1941 if it substantially lacks "[f]loors, stairways, and railings maintained in good repair." (Civ. Code, § 1941.1, subd. (a)(8).)

[7] In response to Separate Statement No. 15, appellant additionally suggested that Cassell violated Civil Code section 1929. It provides that the "hirer of a thing must repair all deteriorations or injuries thereto occasioned by his [or her] want

7

habitable condition is a nuisance and, over time, may ripen into an unfair business practice; (3) Cassell had a duty of care because the stairway was a dangerous condition that was neither open nor obvious; (4) the stairway presented a dangerous condition because it violated the applicable 2013 California Building Code; and (5) there are disputed facts as to whether the stairway was preexisting when Cassell purchased the property, and as to whether the stairway constitutes a prior nonconforming use that does not violate any applicable codes.

Appellant submitted a declaration from a civil engineer named Brad Avrit (Avrit).

Avrit suggested that Cassell breached various statutory duties. Based on his assertion that the property was built in 1923, he opined that "more likely than not [it] was required to be constructed in conformance with the 1923 State Housing Act of California." He did not refer to a specific statute but provided a copy of the act as an exhibit. Section 46 of that act pertained to apartment houses and hotels and provided that "[e]very stairway shall have at least one handrail[.]" Nothing in that act suggested that a single-family home such as the property was subject to Section 46. Avrit went on to opine that Cassell failed to take

---

of ordinary care." (Civ. Code, § 1929.) Notably, Civil Code section 1928 provides: "The hirer of a thing must use ordinary care for its preservation in safety and in good condition." This statutory scheme pertained to appellant's duty as the tenant of the property, not to Cassell's duty as the landlord. (*Haupt v. La Brea Heating & Air Conditioning* (1955) 133 Cal.App.2d Supp. 784, 788 ["Absent an express covenant by a tenant to repair, his sole obligation in the premises is that set forth in Civil Code sections 1928 and 1929"].)

8

reasonable measures to ensure that the stairs complied with the 2013 California Building Code. He noted that section 3401.2 of that code stated, "'Buildings and structures, and parts thereof, shall be maintained in a safe and sanitary condition. Devices or safeguards which are required by this code shall be maintained in conformance with the code edition under which installed. The owner or the owner's designated agent shall be responsible for the maintenance of the buildings and structures.'" (Italics omitted.) He added that Cassell "had the duty and responsibility to eliminate the hazardous condition created by the variation in stairs and lack of a handrail[.]"

Turning to the issue of whether the stairs were dangerous, he stated, "I am of the opinion based on a reasonable degree of engineering and scientific certainty, that the subject stairway constituted a substantial misstep hazard at the time of [appellant's] incident and violated the applicable Building Code that was in effect at the time the subject property was converted from a garage to an apartment[.]" He noted that the risers were larger than the allowed eight inches, the "differentiation of the risers and treads is far greater than that acceptable with differences as large as 2-1/2 [inches]," the "subject stairway . . . lacked a required handrail," and the stairway lacked "the required width of 30" inches. The "combination of the violations made the subject stairway unsafe and dangerous for tenants and their visitors." He added that the "lack of any handrail along the subject stairway presented a substantial fall hazard for somebody exercising reasonable care. Handrails provide a 3rd point of contact to stairway users while ascending or descending, which provides additional balance and stability. Moreover, a handrail can offer help to recover one's balance and prevent a stumble or

9

misstep from turning into a fall. In addition, a handrail placed along the subject stairway would have served a dual purpose in that it not only would have aided people going up and down the stairs but also acted as a guide due to the fact that the subject area light was inadequate at the time" of the fall.

Regarding causation, Avrit opined, "Had a handrail been in place on . . . , [appellant's] incident most likely would not have occurred," and that "the unsafe condition of [the] subject stairway was a direct cause of [appellant's] incident."

In addition to relying on Avrit, appellant adverted to select statements in the deposition of Rollins. Rollins testified: "My experience indicates that [the] assembly, including the platform to the toilet, was probably not permitted." Appellant pointed to evidence that Cassell installed a handrail for the stairs following appellant's incident.

In her opposition papers, appellant did not dispute Separate Statement No. 20. She did, however, dispute Separate Statement No. 21.

Reply Papers

In her reply, Cassell argued that appellant's opposition "improperly focus[ed] on matters absent from her operative pleading" because she did not allege "claims regarding implied warranty of habitability, nuisance, and unfair business practices. She discusse[d] such claims in her Opposition for the first time." Cassell argued that it would be unfair for the trial court to consider these arguments. She claimed that appellant's opposition improperly relied on authority involving tenants because they do not apply to nontenants. In other words, Cassell suggested that even if she owed a duty of care to Mazza, she did not owe one to appellant. Also, Cassell argued that appellant

10

failed to put forth evidence disputing that the stairs were an open and obvious dangerous condition.

Regarding negligence per se, Cassell asserted that Avrit's declaration lacked foundation and was speculative because even though he claimed Cassell violated section 3401.2 of the 2013 Building Code, he failed to "1) state that said Building Code section presents the proper standard [of care] for the evaluation of liability in this case, and 2) . . . state whether said Building Code section applies to the subject stairs which the evidence shows [predated] it." She maintained that there was no evidence that she performed unpermitted construction of the stairway in the bathroom. As for Civil Code sections 1941 and 1941.1, she argued that they were inapplicable because appellant was complaining about the design of the stairway, not the failure to maintain them.

The Hearing

At the hearing, the trial court permitted appellant's counsel to read portions of appellant's deposition that were not submitted in connection with the parties' papers. He quoted her as saying that she slid on some slippers; she did not know if she was wearing slippers; "'the commode being at the top of the stairs was concerning with no rails on it;'" and because she did not like climbing the stairs to use the commode, "that was always just a little precaution I had in my mind." Appellant's counsel then proceeded to argue, "We know she's in the restroom. We know she's on the steps. We know she slid. We know there's no railing."

The Ruling

The trial court granted summary judgment. In its ruling, it stated, "When opposition to summary judgment is based entirely

11

on inferences, such inferences must be 'reasonably deducible from the evidence and not such as are derived from speculation, conjecture, imagination or guesswork.' [Citation.] [Appellant] has no idea how she fell. Thus, even if [Cassell] breached some duty to maintain or repair the stairs (an issue the [trial court] declines to rule on), and even if the stairs were not [an] open and obvious [dangerous condition] (an issue the [trial court] also declines to rule on), [Cassell] met her initial burden to show [appellant] lacks evidence that the state of the stairs caused the fall, and [appellant] failed to raise a triable issue of material fact[.]"

**Appellant's Motion for New Trial**

Appellant filed a motion for new trial and argued, in part, that new evidence was material to her opposition to the motion for summary judgment.[8]

She offered a new declaration in which she stated: "After I finished using the restroom, I began to make my way down the steps of the toilet. As I was stepping down, I fell to the ground and sustained physical injuries. The stairs felt awkward. It felt as though there was [a] step missing or not in the right place. [¶]

---

[8] Pursuant to Code of Civil Procedure section 657, paragraph (4), a motion for new trial may be based on "[n]ewly discovered evidence, material for the party making the application, which he [or she] could not, with reasonable diligence, have discovered and produced at trial." "'The essential elements which must be established are (1) . . . the evidence is newly discovered; (2) . . . reasonable diligence has been exercised in its discovery and production; and (3) . . . the evidence is material to the movant's case.' [Citation.]" (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1161.)

12

I fell because of the uneven placement of the stairs and because there was no railing to help me down from the commode. Had the stairs been designed to code with the proper raises and [a] . . . proper railing[,] I feel that I would not have mis-stepped and would not have fallen."

Avrit submitted a new declaration that was based, in part, on appellant's new declaration. He opined that a combination of code violations made the stairs unsafe and were the cause of appellant's fall.

Cassell opposed the motion and filed objections to appellant's evidence.

The trial court denied the new trial motion without ruling on Cassell's evidentiary objections. However, in part, the trial court determined that Avrit's new declaration could not be considered because Kaney failed to demonstrate that it contained facts that she did not know and could not have reasonably known at the time she was opposing Cassell's motion for summary judgment.[9]

This appeal followed.[10]

---

[9]    To the degree Avrit's new declaration relied on Kaney's new declaration, the trial court's reasoning applied with equal measure to Kaney's new declaration. Regardless, neither declaration factors into our analysis on appeal because (1) they were not submitted with the opposition to the motion for summary judgment and (2) the facts contained within them were readily available to Kaney when she filed her opposition to the motion for summary judgment and, as a result, could not be considered even if we were to review the denial of the motion for new trial.

[10]    We granted the application of the Association of Southern California Defense Counsel (ASCDC) to file an amicus brief.

13

**DISCUSSION**

## I. Summary Judgment Principles.

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "To secure summary judgment, a moving defendant may . . . disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 (*Leslie G.*) ["a moving defendant need not support [her] motion with affirmative evidence negating an essential element of the responding party's case"].) A defendant shows that an element of a cause of action cannot be established by submitting evidence that the plaintiff does not possess, and cannot reasonably obtain, evidence supporting the element. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.) Thus, a moving defendant may rely on factually devoid discovery responses to shift the burden of proof. Once the burden shifts, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact. (*Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 975.)

---

ASCDC urges us "to issue a published opinion confirming that the so-called amnesia presumption—which presumed that an injured party who could not remember the accident at issue acted with due care—was abolished in 1967 with the adoption of the Evidence Code." The abrogated amnesia presumption is not relevant to our discussion, and we decline to discuss it for that reason.

14

"'[C]ausation . . . is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion. [Citation.]' [Citation.]" (*Kurinji v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864.) Causation must be established by nonspeculative evidence. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 774; *Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1525 ["speculative inferences do not raise a triable issue of fact"].)

## II. Standard of Review.

Summary judgment is subject to de novo review. To analyze the issues, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.]" (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.)

In "reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. [Citation.]" (*Caliber Paving Co., Inc. v. Rexford Industrial Realty Management, Inc.* (2020) 54 Cal.App.5th 175, 190.) "[W]e must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment. [Citation.]" (*Ibid.*)

15

## III. The Issues Material to this Appeal.

As we shall discuss, there are triable issues as to ordinary negligence. Appellant's theories based on negligence per se,[11] implied warranty of habitability, nuisance, and unfair business practices are moot.[12]

---

[11] The doctrine of negligence per se establishes that a plaintiff can rely on a statute to prove the standard of care. A presumption of negligence arises from the violation of a statute which was enacted to protect the class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered. (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 584; Evid. Code, § 669, subd. (a)(1) [the failure of a person to exercise due care is presumed if he or she violated a statute, ordinance or regulation of a public entity].)

[12] Respondent argues that appellant "cannot raise a negligence per se argument as to statutes identified for the first time in her opposition to [the] motion for summary judgment. Appellant cannot keep moving the goal post. The tactic of changing one's story to avoid summary judgment . . . is improper." We note that she objected to appellant's new claims based on the implied warranty of habitability, nuisance, and unfair business practices, but there was no similar objection to claims based on the Building Code, the Civil Code or the State Housing Act of California. As to those last three statutory based claims, Cassell briefed them in her reply papers. Though these issues are moot, it bears noting that respondent cannot be heard to complain that appellant raised new theories in her opposition to the summary judgment motion because the reply brief addressed appellant's new theories on the merits without raising an objection. (*Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302 [by briefing the merits and not objecting, defendant waived objection to plaintiff asserting a new cause of action in opposition to summary judgment].)

16

## IV. Ordinary Negligence Principles.

The elements of a cause of action for premises liability are the same as those for negligence. A plaintiff must prove a legal duty to use care, breach of that legal duty, and a breach that is a proximate cause of injury. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207.)

"Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . , except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714.) This statute establishes that "individuals owe a duty of care to avoid injury to others unless public policy mandates an exception. [Citations.]" (*Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, 1133.) "A landlord owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises. [Citation.] This duty of care also extends to the general public." (*Id*. at p. 1134.)

## V. Duty and Breach.

The trial court did not decide whether Cassell owed appellant an ordinary duty of care or breached that duty. Nonetheless, respondent asks us to affirm summary judgment on the ground that there was no breach of an ordinary duty of care.[13]

---

[13] "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs. The supplemental briefs may include an argument that additional evidence relating to that ground exists, but the party has not had an adequate opportunity to present the evidence or to conduct discovery on the issue. The court may reverse or remand based upon the supplemental briefs

17

She argues that the stairs were an open and obvious dangerous condition; that she did not have notice that there was a dangerous condition (even though it was open and obvious); and that if she owed a duty, it was only to Mazza. As discussed below, we reject these arguments and conclude that there are triable issues as to duty and breach. Importantly, respondent never argues that the stairs were safe, and her duty arguments rest only on these other issues.[14]

A. Open and Obvious Dangerous Condition.

Whether a duty should be imposed on a defendant depends on factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113.) The factors include foreseeability of harm plus the burden on the defendant and the consequences to the community of imposing a duty. Foreseeability is a question of law, and it is "typically absent when a dangerous condition is open and obvious. [Citation.]" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 446–447 (*Jacobs*).) "'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy

---

to allow the parties to present additional evidence or to conduct discovery on the issue. If the court fails to allow supplemental briefs, a rehearing shall be ordered upon timely petition of a party." (Code Civ. Proc., § 437c, subd. (m)(2).) Because we are not affirming, this statutory provision is inapplicable.

[14] Appellant submitted pictures of the stairs in conjunction with her opposition to the motion for summary judgment. The pictures suggest that the stairs are steep and pose a risk of people falling. Ultimately, of course, this will be an issue for the trier of fact to decide.

18

or warn of the condition.' [Citation.]  In that situation, owners and possessors of land are entitled to assume others will 'perceive the obvious' and take action to avoid the dangerous condition. [Citation.]"  (*Id*. at p. 447.)

"An exception to this general rule exists when 'it is foreseeable that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it).' [Citation.]  In other words, while the obviousness of the condition and its dangerousness may obviate the landowner's duty to remedy or warn of the condition in some situations, such obviousness will not negate a duty of care when it is foreseeable that, because of necessity or other circumstances, a person may choose to encounter the condition."  (*Jacobs*, *supra*, 14 Cal.App.5th at p. 447.)

Respondent argues:  "Here, [a]ppellant knew about the existence, configuration, and the condition of the steps and stairway, and she was familiar with using these steps and stairway, as she previously visited the premises multiple times, staying overnight, often for extended periods of time of ten days to two weeks, prior to the incident. . . .  Appellant used the bathroom during these visits and never had previous issues with these steps. . . .  Appellant had used the bathroom up to five times during that specific visit in September 2014 prior to the incident. . . .  This bathroom was the only one on the property. . . .  Appellant did not dispute any of these facts. . . .  [Cassell] also submitted photographs in support of this argument. . . .  In opposing [Cassell's] motion for summary judgment, [a]ppellant did not present any evidence to the trial court refuting this open and obvious argument."

19

This argument fails because respondent never wrestles with the exception to the rule.  She does not explain why the alleged open and obvious danger of the stairs is material given that it is foreseeable that occupants and visitors would, by necessity, use the stairs to access the lone bathroom.  The foreseeability of harm remains a triable issue.

B.  <u>Notice</u>.

In *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205–1206, the court explained that an owner cannot be liable for a dangerous condition unless she had actual or constructive knowledge of it, or she could have discovered it by the exercise of ordinary care and should have realized that it involved an unreasonable risk to invitees.  (*Ibid*.)  "The plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge."  (*Id*. at p. 1206.)  "Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations."  (*Id*. at p. 1207.)

Respondent argues:  "Here, [Cassell] owed no duty to remedy any condition of the bathroom steps or stairway because she was never given any notice by anyone that the steps were dangerous or needed repair, or that were any previous incidents related to the steps. . . .  In fact, there were no previous incidents involving the bathroom steps. . . .  The tenant even testified that she liked the steps—she thought they were cute. . . .  Injury therefore was not foreseeable."

We cannot accept this argument.  Avrit explained that, inter alia, the absence of handrails made the stairs a dangerous

condition. From the record, it appears that the stairs may have been in the current condition since at least 1972. Respondent herself argues that the dangerous condition was open and obvious. It is a question of fact for the jury whether Cassell had adequate time to discover the dangerous condition of the stairs and realize that it posed an unreasonable risk.

C. <u>Duty to Appellant</u>.

In suggesting that Cassell could have owed a duty only to Mazza, respondent cites *Garcia v. Holt* (2015) 242 Cal.App.4th 600 (*Garcia*) for the proposition that landlords have heightened duties that they owe to tenants but not to nontenants. She provides no explication of *Garcia*, and we easily conclude that it is not the advertised checkmate.

*Garcia* explained that "[p]ublic policy precludes landlord liability for a dangerous condition on the premises which came into existence after possession has passed to a tenant. [Citation.] This is based on the principle that the landlord has surrendered possession and control of the land to the tenant and has no right even to enter without permission. [Citation.]" (*Garcia, supra*, 242 Cal.App.4th at p. 604.) Thus, before liability may be imposed on a landlord for a third party's injury due to a dangerous condition, the third party must show that the landlord had actual knowledge of the dangerous condition, plus the right and ability to cure the condition. (*Id*. at pp. 604–605.) In this case, there is no suggestion that the dangerous condition of the stairs came into existence after Mazza moved in or that Cassell lacked the right and ability to cure the stairs. Notice and Cassell's ability to cure the stairs are triable issues.

21

## VI. Causation.

The trial court concluded that appellant's inability to remember the fall meant that she lacked nonspeculative evidence of causation.  This was error.  A slip-and-fall plaintiff need not remember her fall to recover damages provided the evidence gives rise to a reasonable and probable inference that the defendant's negligence was a substantial contributing factor.  (*Leslie G., supra,* 43 Cal.App.4th at p. 483; *Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1087.)  This case involves such an inference.

A. <u>The Type of Evidence Required</u>.

"Where the complexity of [a] causation issue is beyond common experience, expert testimony is required to [prove] causation.  [Citations.]"  (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569.)  In contrast, if causation presents a question that is within the common knowledge of persons of ordinary education, then expert testimony is not required.  (*McNeil v. Yellow Cab Co.* (1978) 85 Cal.App.3d 116, 118.) Here, whether the absence of a handrail, the size of the risers, or a combination of both caused appellant to fall was within common knowledge.  Thus, even if Avrit's declaration was necessary to raise a triable issue as to whether the stairs were a dangerous condition (an issue we do not decide), it was not necessary to establish causation.[15]

---

[15]    Respondent takes aim at Avrit's opinion on causation, suggesting that it lacked a reasoned explanation.  (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 ["an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value"].)  This

B. <u>Analysis</u>.

Case law permits an inference that the condition of the stairs[16] caused appellant's fall.[17]

In *Burdette v. Rollefson Construction Co.* (1959) 52 Cal.2d 720 (*Burdette*) the plaintiff leased an apartment in a building that was situated at the summit of a steep hill. (*Id.* at p. 723.) To gain entry to her apartment from the public sidewalk, she had to climb a flight of stairs, make a right-angle turn, traverse a private sidewalk that followed the edge of the hill for 30 or 40 feet, and, finally, climb a flight of four steps to a platform immediately outside her front door. No part of either sets of

_____

issue is moot because causation in this case can be resolved through common knowledge.

[16] For purposes of this appeal, there is no dispute that the stairs were dangerous. Respondent does not attack Avrit's opinion regarding the safety of the stairs, nor does she state that the stairs were safe, inter alia, without a handrail. Once again, her defenses to ordinary negligence were only that she had no duty of care because the dangerous condition was open and obvious, she had no notice of the condition, and she did not owe a duty to the invitees of her tenant. In our analysis, we accept Avrit's unchallenged opinion on the safety of the stairs. But we express no opinion as to its admissibility on remand, or as to whether the safety of the stairs required expert opinion or was within the common experience of lay jurors. (See *Westbrook v. Cal.* (1985) 173 Cal.App.3d 1203, 1210 [holding that expert opinion regarding the danger posed by a condition was inadmissible because it was within common experience].)

[17] The parties debate whether causation is established by the doctrine of res ipsa loquitur. This issue does not require resolution on appeal.

23

stairs, the private sidewalk, or the platform were enclosed by protective guard rails.  (*Ibid.*)

Accompanied by a friend, the plaintiff was preparing to leave her apartment.  "She held the door open for her friend and paused to close the door.  The friend had almost reached the top of the flight of . . . steps leading to the public sidewalk when she heard plaintiff's cries, turned, and saw plaintiff lying upon the public sidewalk." (*Burdette*, *supra*, 52 Cal.2d at p. 723.) Appellant sued the owner of the apartment building and the contractor (defendants) who built it.  The trial court decided in favor of the defendants and against the plaintiff on her claim for personal injury.  (*Id.* at p. 722.)

Our Supreme Court reversed the judgment.  It concluded that the "only reasonable inference is that plaintiff lost her footing and then tumbled down the steep embankment to the public sidewalk below and that a guard rail would have prevented her tumbling to the public sidewalk whether or not it would have prevented her initial loss of footing." (*Burdette*, *supra*, 52 Cal.2d at p. 723.)  The "crucial issue, therefore, [was] whether or not the accident occurred at a place where defendants were under a duty to provide a guard rail." (*Ibid.*)  "Since it appear[ed] as a matter of law, however, that defendants were negligent in failing to provide a railing for the platform, the stairway, *and* the private sidewalk, that plaintiff fell at one of those three places, and that a railing would have prevented her tumbling to the public sidewalk, the trial court's finding that defendants' negligence was not the proximate cause of her injuries cannot be sustained." (*Id.* at p. 726.)

In *Schumann v. C. R. Reichel Engineering Co.* (1960) 187 Cal.App.2d 309 (*Schumann*), plaintiff lived as a tenant on the

24

second floor of a building.  Outside her kitchen and bedroom windows there was a wooden platform with open spaces in its flooring and a 32½ tall railing.  Also, the platform had a hole in it for a ladder system that went from the ground to the roof and provided the only roof access.  Plaintiff regularly reached through the kitchen window to use a clothesline on a pulley system.  Photographs offered into evidence established that she could go through the kitchen window and get out onto the platform.  One day, plaintiff washed clothes and hung them on the clothesline.  Later, she washed dishes.  She could not remember anything after that until she found herself on her knees in the yard below.  (*Id*. at pp. 312–313.)

The *Schumann* plaintiff sued for personal injury, alleging that the defendants should have made the platform safe for her to use.  Hospital records produced in discovery showed that she had complained of blackouts or fainting spells prior to the incident.  The matter went to trial and the trial court granted a directed verdict for the defendants.  (*Schumann*, *supra*, 187 Cal.App.2d at pp. 312–314.)

The defendants urged affirmance on the theory that plaintiff failed to prove that the platform and ladder system caused her injuries, and that the jury could have found in favor of plaintiff only based on conjecture.  (*Schumann*, *supra*, 187 Cal.App.2d at p. 317.)  The court concluded that "a crucial question arises as to whether the presence of a 42-inch top rail would have prevented [plaintiff] from falling over the rail to the yard below or whether the presence of a mid-rail would have prevented her from rolling off the platform to the yard below.  It is conceivable that the jury could draw a reasonable inference that if appellant was out on the platform to retrieve her clothes

25

from the line that she then suffered a blackout or fainting spell which either caused her to fall over the rail to the yard below or that she fell onto the platform and rolled off in the space between the top rail and the surface of the platform; that the presence of a 42-inch top rail or the presence of the mid-rail as required by the safety orders would have prevented this fall. . . .  [This] . . . presents an issue of fact for the court or jury to determine." (*Ibid*.)  The court reversed the judgment.

*Burdette* and *Schumann* are instructive.  Though the plaintiffs in those cases could not remember their falls, the circumstantial evidence led to reasonable and probable inferences that each fell from a height due to the absence of adequate barriers that would have restrained them.  Here, a trier of fact could draw a reasonable and probable inference in appellant's favor that she fell while on the stairs based on her testimony that she remembers being on the stairs and waking up on the floor in pain.  Further, the evidence would permit a trier of fact to draw a reasonable and probable inference that the dangerous condition of the stairs was a substantial factor in the fall.  Specifically, a trier of fact could conclude that appellant would not have fallen if, among other things, she had a handrail to give her balance or give her something to grab onto when stumbling.

In respondent's view, *Burdette* and *Schumann* are distinguishable because they involved the absence of barriers that would have blocked a fall.  We, on the other hand, view these differences as ones of degree, not kind.  It is true that a handrail (or safely sized risers) would not have blocked appellant's fall, but a trier of fact could still reasonably infer they would have prevented the fall.  Even though risers and handrails do not

provide as much absolute protection as a railing next to a drop off, they still provide protection.

Respondent argues that an inference that the stairs caused appellant to fall is speculative. But it is more reasonable and probable inference that the unsafe factors identified by Avrit, including the lack of a handrail, were a substantial factor in appellant's fall than it is to infer that appellant would have fallen regardless of the condition of the stairs. (*Leslie G.*, *supra*, 43 Cal.App.4th at p. 483 [to defeat summary judgment, a plaintiff must show that the inferences favorable to her are more reasonable or probable than those against her]; *Brautigam v. Brooks* (1964) 227 Cal.App.2d 547, 556 [an inference must be drawn from facts, and it cannot be based on mere possibility].) It is within common knowledge that safe riser heights and handrails help prevent stumbles, and handrails can prevent stumbles from becoming falls.

Respondent argues that it is just as likely that appellant's fall was caused by something other than the defects identified by Avrit. First, respondent suggests that appellant may have slipped on the bath mat around the base of the commode. But appellant testified that she was on the stairs and then woke up on the floor. There is no indication in her statement that she slipped while standing at the commode where the bath mat was located. It is not reasonable and probable to infer that appellant slipped on the bath mat given the absence of any evidence that it was located on the stairs. Second, respondent adverts to appellant's testimony that she may have slid on slippers. Notably, appellant testified that she did not know if she was wearing slippers, so her testimony on the point was equivocal at best. In any event, respondent ignores Avrit's explanation for

27

how handrails prevent stumbles and falls.  In our view, a reasonable trier of fact could infer that even if appellant had slid on slippers, a handrail would have prevented her from falling.

*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098 (*McGonnell*) does not trigger a shift in our thinking.  In that case, the threshold issue whether the decedent had been exposed to the defendant's asbestos.  (*Id*. at p. 1103.)  In moving for summary judgment, the defendant relied upon the decedent's deposition testimony establishing that he had no knowledge of having had any exposure.  The court concluded that this evidence showed that the wrongful death plaintiffs could not prove the causation element of their claim.  (*Id*. at p. 1104.)  Simply put, *McGonnell* and appellant's case are not on equal footing.  Here, there is evidence appellant was on dangerous stairs and fell.  In *McGonnell*, there was no evidence that the plaintiff was exposed to the defendant's asbestos.

Respondent pushes back on this analysis and cites a trio of cases.  *Darrach v. Trustees of San Francisco County Medical Asso.* (1953) 121 Cal.App.2d 362, 366 stated, "'No inference of negligence arises from the mere proof of a fall upon the stairway. "In order to impose liability on the owner it must be shown that a dangerous condition existed, and that the defendant knew or should have known of it.  While under some circumstances, negligence may be inferred from the existence of a dangerous condition, the burden rests upon the plaintiff to show the existence of a dangerous condition, and that defendant knew or should have known of it."' [Citation.]" (*Ibid*.)  *Harpke v. Lankershim Estates* (1951) 103 Cal.App.2d 143, 145 is an echo of the same rule of law, and *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 826 notes that the common wisdom from

28

many jurisdictions declares "as a general rule that res ipsa loquitur does not apply to slip and fall cases." None of these cases are pertinent to our analysis because appellant offered evidence that the stairs were a dangerous condition. She does not suggest that her fall, by itself, proved that there was a dangerous condition.[18]

## DISPOSITION

Summary judgment is reversed. Appellant shall recover her costs on appeal.

### **CERTIFIED FOR PUBLICATION**.

_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

---

[18] All other issues are moot.